613 F.2d 722
 1979-1 Trade Cases 62,544, 4 Fed. R. Evid. Serv. 243
 RENO-WEST COAST DISTRIBUTION CO., INC., Plaintiff-Appellant,
v.
The MEAD CORP., Blake, Moffitt & Towne, a Division of Saxon
Industries Inc., Nolex Inc., Noland Paper Co. and
Seaboard Paper Co., Defendants-Appellees.
RENO-WEST COAST DISTRIBUTION CO., INC., Plaintiff,
v.
The MEAD CORP., Blake, Moffitt & Towne, etc., et al., Defendants.
The MEAD CORP., Claimant-Appellee,
v.
RENO-WEST COAST DISTRIBUTION CO., INC., Matrix Inc., George
B. Stillwagon III, Counterclaimants-Appellants.
 Nos. 77-1029, 77-1073.
 United States Court of Appeals,
Ninth Circuit.
 Feb. 21, 1979.
Rehearing Denied in No. 77-1029, May 11, 1979.
Certoriari Denied Oct. 29, 1979. See 100 S.Ct. 267.
 
 Francis O. Scarpulla (argued), Cooper & Scarpulla, San Francisco, Cal., for plaintiff-appellant.
 Charles J. Faruki (argued), of Smith & Schnacke, Dayton, Ohio, for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before MOORE,* SNEED and KENNEDY, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 Plaintiff Reno-West Coast Distribution Co. (RWC) appeals from a judgment entered for defendants after a jury trial in its action alleging a conspiracy to impose territorial and price restrictions violative of Section 1 of the Sherman Act. Three issues are presented on appeal; the first two pertain to the adequacy of the district judge's jury instructions while the third concerns the propriety of the court's exclusion of certain testimony on damages offered by RWC. This court has jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.
 
 I.
 
 2
 Facts.
 
 
 3
 Plaintiff-appellant RWC, an independent paper merchant house located in Reno, Nevada, was engaged in the wholesale distribution of business and commercial papers primarily manufactured by defendant Mead Corporation. Mead manufactures various paper products which it markets through Mead-owned wholesale paper merchant houses and independent wholesale merchant houses, or sells directly to certain large customers. Defendant Noland Paper Company is a Los Angeles-based wholesale paper merchant house which was partially-owned by Mead until 1972. Defendant Seaboard Paper Company is a San Francisco-based, partially-owned subsidiary of Mead.
 
 
 4
 Plaintiffs and defendants presented dramatically different versions of the facts to the jury. RWC charged that Mead conspired with the other defendants to restrict the resale territory and prices of the plaintiff. Specifically, RWC argued that Mead imposed territorial and price restrictions as a condition of granting RWC a distributorship; that RWC engaged in aggressive price cutting outside its prescribed territory and as a consequence, began to increase its market share at the expense of various competitors, including defendants Noland and Seaboard; that Mead acted on complaints from various distributors and conspired with its subsidiaries, Seaboard and Noland, to terminate RWC's business; and that Mead effected the unlawful scheme to end RWC's business by drastically reducing the credit available to RWC. Defendants countered by arguing that any territorial or price restrictions followed by RWC had been suggested by its own President and later were abandoned with Mead's implicit approval; that RWC did not act as an independent distributor, but served merely as a Mead broker or agent; that Mead did not terminate RWC, but merely limited its credit due to RWC's inability to make timely payment of its obligations to Mead; and that RWC was, from its inception, a small, thinly capitalized company that never had a profitable year. At the conclusion of a month-long trial the jury returned a verdict in favor of defendants.
 
 II.
 
 5
 Adequacy of the Jury Instructions.
 
 
 6
 The trial judge refused to charge the jury in accordance with appellant's proposed instruction concerning antitrust liability.[1] Appellant now voices two complaints concerning the instructions given. First, RWC complains that the trial court erred by refusing to give the Schwinn per se illegality charge concerning territorial restrictions which it offered. Second, RWC complains that the trial court erred by allegedly refusing to give the General Motors per se illegality charge concerning a horizontal conspiracy among the various distributors which it requested. We will consider each of these contentions in order.
 
 
 7
 The district court's refusal to give plaintiff's proffered Schwinn instruction concerning alleged territorial restraints was proper in light of the prevailing precedent in this circuit at the time of trial and its propriety subsequently has been fully vindicated by the Supreme Court's decision in Continental T. V., Inc. v. GTE Sylvania, Inc., 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977). The rule of reason instruction given by the district court comports with the standard set forth in GTE Sylvania. No error exists in this sector.
 
 
 8
 Appellant's second complaint is that the trial court erroneously refused to instruct the jury on its theory that a horizontal conspiracy existed among its competitors, in which Mead served as the enforcer. The trial court properly refused to give plaintiff's requested horizontal conspiracy charge because it was comingled with the improper Schwinn per se instruction. The GTE Sylvania decision largely undercut the primary theory of recovery advanced by plaintiff below, I. e., that defendant Mead, acting alone or in concert with the other defendants, conspired to impose vertical territorial and price restrictions on RWC. Faced with this subsequent, unfavorable precedent, appellant now seeks to resurrect its horizontal conspiracy contentions. The charge proffered by appellant, however, did not clearly and unambiguously state the law dealing with a General Motors -type horizontal conspiracy. See United States v. General Motors Corp., 384 U.S. 127, 86 S.Ct. 1321, 16 L.Ed.2d 415 (1966); Bowen v. New York News, Inc., 522 F.2d 1242 (2d Cir. 1975), Cert. denied, 425 U.S. 936, 96 S.Ct. 1667, 48 L.Ed.2d 177 (1976); Eiberger v. Sony Corp., 459 F.Supp. 1276 (S.D.N.Y.1978). A literal reading of the proposed instruction suggests that it was intended to encompass only a vertical conspiracy involving defendant Mead, acting either alone or in concert with the other defendants.[2] We are of the opinion that the proffered charge concerning a General Motors conspiracy was not properly presented to the trial court and that plaintiff's horizontal conspiracy theory was, in any event, adequately covered by the trial court's instructions taken as a whole. Gray v. Shell Oil Co., 469 F.2d 742, 747-48 (9th Cir. 1972), Cert. denied, 412 U.S. 943, 93 S.Ct. 2773, 37 L.Ed.2d 403 (1973).[3]
 
 
 9
 Although it is true that a party is entitled to have its theory of the case presented to the jury by proper instructions, "the word 'proper' deserves emphasis. The burden is upon counsel to present a correct instruction. If what he proposes is incorrect, the court may reject it; the court is not required to recast it, although it may do so." Blassingill v. Waterman S.S. Corp., 336 F.2d 367, 368 n.2 (9th Cir. 1964). In this case the trial court adequately instructed the jury concerning the applicable law. While the charge might have been fashioned so that it expounded plaintiff's theory more clearly, it does not follow that it was uncertain or inadequate under the circumstances. See Osguthorpe v. Anschutz Land & Livestock Co., 456 F.2d 996, 1004 (10th Cir. 1972).
 
 III.
 
 10
 Exclusion of Testimony Concerning Damages.
 
 
 11
 Appellant's final contention is that the district court erred by refusing to permit RWC's President, George Stillwagon, to testify as an expert witness concerning the method used to calculate plaintiff's projected damages. The court permitted Stillwagon to testify to the following issues: the percentage market share possessed by plaintiff in Nevada; the percentage market share plaintiff claimed it could have captured in the areas of alleged exclusion; and the estimated gross receipts and net profits from anticipated sales in the restricted areas. The trial court also permitted one of plaintiff's witnesses, a Dr. Haessler, to testify as an expert concerning the information plaintiff sought to introduce through Stillwagon. Appellant's reliance upon Pacific Coast Agricultural Export Assoc. v. Sunkist Growers, Inc., 526 F.2d 1196 (9th Cir. 1975), Cert. denied, 425 U.S. 959, 96 S.Ct. 1741, 48 L.Ed.2d 204 (1976) is misplaced. In Sunkist the district court found that plaintiff's expert witnesses were properly qualified as experienced businessmen capable of providing the information sought. In this case the district court concluded that Mr. Stillwagon was not so qualified. The trial court is vested with broad discretion concerning the admissibility or exclusion of expert testimony and the court's action is to be sustained unless shown to be manifestly erroneous. Hamling v. United States, 418 U.S. 87, 108, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); Salem v. United States Lines Co., 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962); United States v. Navarro-Varelas, 541 F.2d 1331 (9th Cir. 1976), Cert. denied, 429 U.S. 1045, 97 S.Ct. 751, 50 L.Ed.2d 759 (1977). No such showing has been made in this case.
 
 
 12
 Accordingly, we affirm the judgment of the district court.
 
 
 13
 AFFIRMED.
 
 
 
 *
 Hon. Leonard P. Moore, Senior United States Circuit Judge for the Second Circuit, sitting by designation
 
 
 [1]
 RWC proposed the following instruction concerning antitrust liability:
 The antitrust laws are intended to foster and preserve our system of free, competitive enterprises, to preserve the fullest practicable competition in the market place, and to prevent the accomplishment of a monopoly in any business or industry.
 There are certain agreements or practices which, because of their pernicious effect on competition and lack of any redeeming virtue, are conclusively deemed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they caused or the business excuse for their use. Territorial restrictions are (sic) resale price fixing are in this category.
 A territorial restriction exists where a manufacturer sells its goods to a distributor and then restricts the area in which that distributor can resell those products. This, without more, is a violation of the antitrust laws. Such an agreement is illegal whether done only by the manufacturer or whether the manufacturer worked in concert with other distributors.
 Resale price fixing occurs when a seller requires the person to whom he has sold goods to resell them at a specified price. Territorial restrictions occur when the seller of goods limits or restricts the area in which the person to whom he sold the merchandise can resell the merchandise. Customer restrictions occur when a manufacturer prohibits its distributor from reselling products to certain customers.
 If you find such violations here, I instruct you that the fact that the defendants or the co-conspirators may have had some business justification for their conduct would not constitute a defense. Nor is it a defense in such circumstances that the defendants may have believed that what they were doing was legal or good for business.
 Accordingly, should you find from the evidence in this case that the Mead Business & Commercial papers sold to plaintiff, to the other defendants or co-conspirators, or all of them, moved in the course of interstate commerce, and should you further find that the defendant Mead, either alone or in concert with any of the other defendants or co-conspirators, restricted the area in which plaintiff could re-sell B&C papers, or the customers to whom plaintiff could re-sell B&C papers, or that resale prices were maintained, then the defendants would have violated the antitrust laws in the manner charged by the plaintiff, and you must find for the plaintiff.
 
 
 [2]
 Note the following passages taken from the proposed instruction:
 A territorial restriction exists Where a manufacturer sells its goods To a distributor and then Restricts the area in which That distributor can resell those products. This, without more, is a violation of the antitrust laws. Such an agreement is illegal Whether done only by the manufacturer or whether the manufacturer worked in concert with other distributors.
 Resale price fixing occurs When a seller requires the person to whom he has sold goods to resell them at a specified price. Territorial restrictions occur When the seller of goods limits or restricts the area in which the person to whom he sold the merchandise can resell the merchandise. Customer restrictions occur When a manufacturer prohibits its distributor from reselling products to certain customers.
 Accordingly, . . . should you . . . find that The defendant Mead, either alone or in concert with any of the other defendants or co-conspirators, restricted the area in which plaintiff could re-sell B&C papers, or the customers to whom plaintiff could re-sell B&C papers, or that resale prices were maintained, then the defendants would have violated the antitrust laws in the manner charged by the plaintiff, and you must find for the plaintiff. (emphasis added).
 
 
 [3]
 Note, E. g., the following excerpts from the instructions given by the trial court:
 In this action the plaintiff complains that in December of 1970, the defendant, Mead, along with defendants Seaboard and/or Noland and other co-conspirators, combined and conspired in violation of the antitrust laws to restrain interstate trade and commerce in the sale of business and commercial papers.
 Plaintiff contends that Defendant Mead acted in concert with the other defendants to restrict the territory in which plaintiff could resell Mead's business and commercial papers.
 Plaintiff also contends that Defendant Mead, in concert with Defendant Seaboard and others, required Plaintiff to maintain resale prices for business and commercial papers.
 Plaintiff further contends that defendant Mead, to protect Seaboard and Noland, effectively terminated plaintiff as a Mead merchant house.
 You will note that not every act in restraint of trade is illegal under the Sherman Act, but only when it is a result of a combination, contract, or conspiracy. These words mean practically the same thing and it is a necessary element in the plaintiff's case that for you to find there was a combination or conspiracy the words are practically interchangeable to restrain trade in the fine papers business.
 There can be no conspiracy unless more than one person is involved. The very word "conspiracy" means "together with someone else."
 The first thing that is required before you have a conspiracy is that there be two or more parties to the alleged conspiracy. This means that at least one defendant must be found to have agreed with one or more others to carry out the illegal acts which plaintiff claims they carried out. . . . (T)he law requires that any conspiracy you find in this case must be between a defendant and one or more other persons including, of course, the other defendants. . . .
 The plaintiff claims that the conspiracy occurred among Mead, Seaboard, and Noland, the defendants in this action. You cannot find defendants liable for a conspiracy to unreasonably restrain trade unless you find that one or more of these companies participated in such a conspiracy.
 As I said a moment ago, a conspiracy requires at least two independent parties and a defendant cannot be found guilty of conspiring with itself.
 A conspiracy is a combination or agreement of two or more persons to accomplish some unlawful purpose or to accomplish some lawful purpose for unlawful means. So a conspiracy is a kind of partnership in which each member becomes the agent of every other member.
 The essence of a conspiracy is a combination or agreement to violate the law.
 Before you can find that Mead, Noland or Seaboard became a member of the conspiracy complained of by plaintiffs, you must find by a preponderance of the evidence first, that the conspiracy was knowingly formed; and second, at least two defendants knowingly participated in a common and unlawful plan with the intent to materially aid or further some object or purpose of the plan.
 In determining whether and to what extent there was a conspiracy between the defendants and any of the co-conspirators, you may take into consideration the fact that such a conspiracy can be achieved by agreement, by tacit understanding between the defendants and co-conspirators or by acquiescence coupled with assistance in bringing about its purposes.
 Reno-West Coast also claims that it was terminated as a fine paper's dealer in furtherance of a price-fixing conspiracy involving the defendants. In order to establish this claim plaintiff must show, by a preponderance of the evidence, (1) that Mead and these merchants actually agreed to fix fine paper prices in the west coast area, and (2) that Mead terminated Reno-West Coast as a fine paper's dealer in furtherance of the conspiracy.
 A conspiracy to fix prices in or effecting interstate commerce, such as alleged in the complaint, is in and of itself an unreasonable restraint of trade.
 Whether the prices agreed to be fixed were or are reasonable or unreasonable is immaterial, but the conspiracy to fix prices in interstate commerce is of itself an unreasonable restraint of trade.