822 F.2d 896
 1987 Copr.L.Dec. P 26,140, 3 U.S.P.Q.2d 1549
 Cliff MAY, Plaintiff/Counter-Defendant/Appellant,
v.
Ray WATT; Ellis Ring; Charles C. Reed; Sam Kiyotoki,
d/b/a Kiyotoki/Hamilton Assoc.; Watt Industries, Inc.;
Century Woods Partnership; Toronto Dominion Bank of
California; Century Hill Realty Co., d/b/a Century Woods
Realty Company, Defendants/Appellees,
and
Ring Brothers Corporation, a California Corp.,
Defendant/Counter- Plaintiff/Appellee.
 Nos. 83-6243, 83-6246.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 6, 1987.
Decided July 22, 1987.
 
 Wilmer E. Windham, Encino, Cal., for plaintiff/counter-defendant/appellant.
 Hillel Chodos (Gina M. Putkoski, on brief), Beverly Hills, Cal., for defendant/counter-plaintiff/appellee.
 Appeal from the United States District Court for the Central District of California.
 Before WRIGHT, REINHARDT, Circuit Judges, and COPPLE,* District Judge.
 REINHARDT, Circuit Judge:
 
 
 1
 May seeks reversal of directed verdicts in favor of Ray Watt and Ring Brothers Corporation, building developers, for alleged violations of copyright law, the Lanham Act, fraud, and tortious breach of contract. He also seeks reversal of the trial court's failure to submit a proffered jury instruction on contract rescission and quantum meruit recovery. On their cross-appeal, Watt and Ring Brothers appeal the trial court's denial of their motion for a directed verdict, and the jury verdict in favor of May on the cause of action for breach of contract.
 
 FACTS
 
 2
 Cliff May, a well-known designer of homes, entered into a contract with Ring Brothers, an experienced developer, to design a residential condominium complex. May's designs were to be translated into architectural plans by an architect who would coordinate and manage the project. The contract contained the following "artistic veto" clause: "You [Ring Brothers] will permit no design changes to be made by any person including the contractor, architect, interior designer, decorator or landscape architect in the plan drawings, and specifications without the prior written approval of Cliff May." Advertisements for the condominium complex stated that May had designed it. During construction, May protested to Ring Brothers and its new partner, Ray Watt, that the project was not progressing in accordance with his design plans. He complained that the project's appearance did not accurately reflect the contents of his plans or do credit to his unique talents. Dissatisfied with the response of Ring Brothers and Watt, May filed a complaint in the district court alleging breach of contract, fraud, and tortious breach of contract. He also claimed violation of the Lanham Act, 15 U.S.C. Sec. 1125(a) (1982), and the Copyright Act, 17 U.S.C. Secs. 101-810 (1982). He requested damages and equitable relief.
 
 
 3
 At trial, Watt and Ring Brothers moved for directed verdicts on all counts. The court granted the motion except on the breach of contract claim. The judge instructed the jurors that were they to conclude that the contract required the defendants to build the physical buildings in conformity with May's designs and specifications, and that Watt and Ring Brothers had not done so, they were to find defendants in breach of contract. He submitted instructions to the jury on compensatory damages. May requested instructions on rescission of contract and quantum meruit recovery. The judge rejected the proposed instructions. Instead, the court instructed the jury that May would be entitled to no more in damages than the payments he would have obtained had Ring Brothers and Watt fully performed their contractual obligations.
 
 
 4
 The jury found that Watt and Ring Brothers had breached the contract and awarded May the balance due. In addition, the court, at the close of trial, in consequence of the jury verdict on contract breach, ordered Watt and Ring Brothers not to use May's name in connection with promotion of the project. However, the defendants were permitted to respond to inquiries regarding the project's design by stating that it had been designed originally by May, but that he was no longer associated with it. The court also ruled that the defendants could continue to use May's original designs to complete the project. Watt and Ring Brothers do not directly appeal the issuance of the injunction.
 
 DISCUSSION
 1. Breach of Contract
 
 5
 Watt and Ring Brothers appeal the trial court's denial of a directed verdict and the jury verdict on the breach of contract cause of action.[1] The language of the contract states that no changes are to be made in the plan drawings and specifications unless specifically approved by May. The defendants contend that this only precludes them from making changes on the physical design plans themselves. Under this theory, even if the construction diverged substantially from May's design so that the finished condominiums bore no resemblance to May's concept, the defendants would not be in breach because no changes would have been made on the actual design plans. The jury, however, rejected this contention and found that by not following May's plans when constructing the condominium defendants had breached the contract. There was adequate evidence in support of May's interpretation of the contract for the question to be submitted to the jury and adequate evidence for the jury to find defendants in breach of contract.
 
 2. Fraud
 
 6
 May argues that Ring Brothers deceived him when signing the contract because it had no intention of faithfully translating May's design plans into condominium structures. A promise made without any intention of performing it may constitute fraud. Cal.Civ.Code Sec. 1572(4) (West 1982). May asked for compensatory damages for harm to his reputation and for mental suffering. He also asked for exemplary damages.
 
 
 7
 While exemplary damages may not be awarded for breach of contract, even if the breach is willful, fraudulent, or coupled with malice, Crogan v. Metz, 47 Cal.2d 398, 405, 303 P.2d 1029, 1033 (1956), the tort of fraud may be pleaded for the same events as those giving rise to breach of contract. Acadia, California, Ltd. v. Herbert, 54 Cal.2d 328, 336, 5 Cal.Rptr. 686, 691, 353 P.2d 294, 299 (1960). In an action for fraud, the plaintiff may recover exemplary damages upon a showing of malice, fraud, or oppression. Haigler v. Donnelly, 18 Cal.2d 674, 680, 117 P.2d 331, 335 (1941).
 
 
 8
 The defendants contested May's interpretation of the contract and argued that their conduct was consistent with its terms. Although the jury found May's interpretation more credible, there was no evidence to support a claim that defendants' conduct was fraudulent. Therefore, exemplary damages are not appropriate. Furthermore, May offered no evidence that would tend to prove damage to his reputation, or any mental suffering on his part. Thus, he would not in any event be entitled to any greater recovery under his cause of action for fraud than was available under his successful cause of action for breach of contract.
 
 3. Tortious Breach of Contract
 
 9
 May argues that Watt and Ring Brothers tortiously breached the contract. Where contracting parties have a "special relationship", breach of the implied covenant of good faith and fair dealing may give rise to a cause of action sounding in tort. See Wallis v. Superior Court, 160 Cal.App.3d 1109, 1115-19, 207 Cal.Rptr. 123 (1984). A special relationship may exist where the parties are in inherently unequal bargaining positions, the motivation for one party entering the contract is other than for profit, and ordinary contract damages are inadequate. Id. at 1118, 207 Cal.Rptr. 123.
 
 
 10
 May argues that the bargaining relationship between the parties was inherently unequal. However, May is a widely acclaimed and sought after designer of homes, whom Ring wanted for his expertise and reputation in order to enhance the attractiveness and value of the condominium project. Not only was May's bargaining position a good one but he was the one who actually prepared the contract. Therefore, we agree with the district court that May's claim of unequal bargaining positions was without merit.
 
 
 11
 4. Contract Rescission and Quantum Meruit Recovery
 
 
 12
 May argues that his remedies for breach of contract are inadequate to make him whole. He invokes the doctrine of contract rescission and quantum meruit recovery. We note at the outset that "in any case in which plaintiff seeks a kind of judgment that can be given at law, a law action can be maintained though it goes on a theory of recission." G. Palmer, The Law of Restitution Sec. 11.3, vol. 2 at 506 (1978). Accordingly, if there was sufficient evidence to support May's claim, it was a proper question for the jury.
 
 
 13
 May argues that a major reason for his entering into the contract was that the product would be a large scale, faithful rendition of his work that would stand as a monument to his design skills. Accordingly, he states, his contract price was substantially discounted to reflect this non-pecuniary consideration.[2] May argues that in light of the defendants' having improperly defeated the principal reason for his agreeing to undertake the project, the contract should be rescinded and quantum meruit recovery provided. See generally House v. Piercy, 181 Cal. 247, 183 P. 807 (1919). At trial, May requested jury instructions on contract rescission and quantum meruit recovery. The trial court erred when it refused to submit the instructions to the jury.
 
 
 14
 A party is entitled to have his theories, if supported by evidence, presented to the jury. Reno-West Coast Distribut. Co., Inc. v. Mead Corp., 613 F.2d 722, 725-26 (9th Cir.), cert. denied, 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 183 (1979). Under California law, a contract may be rescinded where the breach or non-performance is so substantial and fundamental as to defeat an important objective of the non-breaching party. Cal.Civ.Code Secs. 1689(b)(2), 1691-1693 (West 1985). Here, the jury should have had the opportunity to consider May's contention that a major purpose of his making the contract was sufficiently frustrated so as to warrant rescission.
 
 
 15
 At trial, May's attorney proffered a jury instruction regarding quantum meruit recovery. The instruction he submitted was flawed in that it would have required the jury to apply a fixed calculation (7.5% of the building cost of the condominium complex) as the sole basis for determining the value of May's services. While the burden is on counsel to present a correct instruction, and the court is not required to recast a flawed instruction, the court may do so. Blassingill v. Waterman S.S. Corp., 336 F.2d 367, 368-69 n. 2 (9th Cir.1964). Here, there is no question that the proffered instruction on the issue of contract recission correctly stated the relevant legal principle. May's proposed instruction on the appropriate recovery, however, was incorrect. We believe that the court had an obligation to give the jury the instruction regarding contract recission because the evidence supported that instruction. In addition, we believe that in the circumstances here, i.e. a valid liability instruction coupled with an invalid damage instruction, the court should have corrected the latter instruction and submitted the modified version to the jury. The failure of counsel to submit an accurate damage instruction should not result in the abrogation of an otherwise valid cause of action.
 
 
 16
 We also note in passing that May has not waived his right to seek quantum meruit recovery by electing to submit a contract damage theory to the jury. "The doctrine of election, as applied to a choice of remedies, either offensive or defensive, which precludes a party from claiming repugnant rights, is but an extension of the general principles of equitable estoppel, and proceeds upon a like theory that the inconsistent attitude of the party will put his adversary to some disadvantage." McDaniels v. General Ins. Co., 1 Cal.App.2d 454, 461, 36 P.2d 829 (1934). Here, May was not given any opportunity to make an election since the Court refused to instruct the jury on his quantum meruit claim. In any event, he was not required to make an election between the relevant contract theories he advocated (breach of contract and recission) prior to a jury verdict. See North Am. Graphite Corp. v. Allan, 184 F.2d 387, 389 (D.C.Cir.1950).
 
 5. Lanham and Copyright Acts
 
 17
 The legal and equitable relief May has already been awarded as a result of his contract claim is at least as great as any he could have received under the evidence adduced on his Lanham Act and Copyright Act claims. Cf. Chicago G.W. Ry. v. Kendall, 266 U.S. 94, 97-98, 45 S.Ct. 55, 56, 69 L.Ed. 183 (1924).
 
 
 18
 The Lanham Act, 15 U.S.C. Sec. 1125(a), is the federal counterpart to state unfair competition laws and has been invoked to prevent misrepresentation that may injure reputation. Remedies for violation of Lanham Act provisions include an injunction prohibiting the false description or representation and recovery for damages. See, e.g., New West Corp. v. Nym Co. of Cal., Inc., 595 F.2d 1194 (9th Cir.1979).
 
 
 19
 Here, the trial court issued an injunction prohibiting Watt and Ring from using May's "name or likeness in connection with any promotion or advertising of the [condominium project]." The court permitted the defendants to respond to inquiries about the design of the project with the statement that it was originally designed by May; however, the defendants are required to add that May is no longer associated with the project. At oral argument, May conceded that the Lanham Act would not provide him with any additional protection. Thus, given the relief already provided to May, we need not reach the question whether he stated an additional cause of action under the Lanham Act for the same harm.
 
 
 20
 May also seeks relief under the copyright laws, 17 U.S.C. Sec. 101. Remedies for copyright violation include (1) actual damages, (2) infringer's profits, and (3) statutory "in lieu of" damages. See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 512 (9th Cir.1985).
 
 
 21
 May did not submit proof that he would be entitled to greater "actual damages" in copyright than he has already been awarded in contract. The damages theoretically available to May under the category "infringer's profits," are best understood in this context as being a claim for "indirect profits." Here, the defendants did not actually sell May's plans to some third party (establishing its market value); rather, May acknowledges that the condominium complex is itself valuable, but claims that its value was increased through the use of his designs and name. We have previously held that indirect damages, like those May seeks here, are available where they are "ascertainable." Id. at 517. However, here, May failed to show the amount of any such damages. Finally, May has not sought recovery for statutory or "in lieu of" damages.
 
 
 22
 May suggests that additional equitable relief may be available to him. May's counsel conceded at oral argument that no further injunctive relief is available under the Lanham Act. We conclude, similarly, that no further injunctive remedies would be available under the Copyright Act, assuming arguendo that May stated a valid cause of action under that statute.
 
 
 23
 First, the contract between the parties expressly contemplates that if a breach occurs after completion of the working drawings, Watt and Ring Brothers are entitled to maintain possession of and utilize May's designs. Second, had the district court issued further injunctive relief either ordering that the complex be demolished or requiring the defendants to use distinctively different designs for the remainder of the project it would have abused its discretion. Thus, no further remedies under the two federal statutes are available to May. Accordingly, we do not reach the antecedent question whether May properly stated causes of action under either or both those statutes.
 
 CONCLUSION
 
 24
 We affirm the trial court's entry of directed verdicts in favor of the defendants on the causes of action for violation of the Lanham Act, the copyright laws, fraud, and tortious breach of contract. We also uphold the jury's verdict that Watt and Ring Brothers breached their contract with May. However, we hold that the trial court erred in failing to submit May's contract recission claim to the jury. Accordingly, we remand for a new trial only on the question whether the defendants' breach was such as to warrant a recission of the contract and, if so, applying quantum meruit principles, what the amount of any additional recovery should be.
 
 
 25
 We also note that Watt and Ring Brothers have requested that if we reverse on the quantum meruit claim, we direct that the question of breach of contract be resubmitted to a jury. We are aware of no reason for doing so. The fact of breach has been established, as has the appropriate amount of damages for that breach. If a new trial is held on recission, and the quantum meruit damages are greater than those already awarded for breach of contract, May will be entitled to the additional amount. If the award in quantum meruit is less, the verdict will be of academic interest only.
 
 
 26
 Finally, we reject defendants' request that we reverse the award of attorney's fees in favor of May. May was indeed the prevailing party and the district judge did not abuse his discretion in fixing the amount.
 
 
 27
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 *
 Honorable William Perry Copple, United States District Judge, District of Arizona, sitting by designation
 
 
 [1]
 An appeal does not lie from a denial of a motion for directed verdict. See Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 217, 67 S.Ct. 752, 755, 91 L.Ed. 849 (1947). In any event, the motion was properly denied
 
 
 [2]
 We note the trial court's implicit ruling that the formulation of damages for breach of the "artistic veto" provision of the contract would be speculative. Ordinarily, damages for breach of contract are not available when speculative. 11 S. Williston A Treatise on the Law of Contracts, Sec. 1345 (3d ed. 1968), Westwater v. Grace Church, 140 Cal. 339, 342, 73 P. 1055 (1903). We need not rule on the applicability of that principle to a breach of an artistic veto clause because May failed to object on appeal to the court's instructions regarding contract breach damages