**EW TRUCK & EQUIPMENT COMPANY, INC., Appellant**

**v.**

**BOB COULTER, doing business as SOUTH PACIFIC EQUIPMENT & REPAIR, Appellee**

High Court of American Samoa
Appellate Division

AP No. 08-91

March 13, 1992

Before RICHMOND, Associate Justice, GOODWIN,* Acting Associate Justice, MUNSON,** Acting Associate Justice, MAILO, Associate Judge, and BETHAM, Associate Judge.

Counsel:     For Appellant, Robert A. Dennison III
             For Appellees, Roy J.D. Hall, Jr.

MUNSON, J.:

THIS MATTER is before the Court on appeal from the Trial Division.

## Procedural History

This appeal stems from that portion of the judgment affecting one of two cases consolidated for trial, CA Nos. 59-90 and 62-90. Appeal was taken only from the judgment relating to CA No. 59-90, EW Trucking Company, Inc. v. Bob Coulter, doing business as South Pacific Equipment and Repair,[1] which involved a contract for purchase of a boom truck to be used in electrical contracting work.

The case was tried before a three-judge panel April 29-30, 1991. The decision was announced from the bench at the conclusion of trial, and a written opinion and order was entered May 6, 1991.

---

* Honorable Alfred T. Goodwin, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, serving by designation of the Secretary of the Interior.

** Honorable Alex R. Munson, Chief Judge, United States District Court for the Northern Mariana Islands, serving by designation of the Secretary of the Interior.

[1] In CA No. 62-90, South Seas Shipping Co. v. South Pacific Repair & Equipment Co., Inc. and EW Truck & Equipment Co., Inc., South Seas Shipping sued SPEAR and EW for payment of shipping and storage charges for the truck which was the subject of the lawsuit in CA No. 59-90. No appeal was taken from that portion of the Trial Division's decision which concerned liability to South Seas for shipping and storage charges.

Shortly after entry of the judgment, appellant EW moved for a new trial or to amend the judgment to show that the boom truck was in fact sufficiently insulated to be used for its intended purpose, and thus, that the part of the judgment which required EW to have the truck insulated was in error and should be amended. After an evidentiary hearing held in late May, 1991, the trial court by written order filed June 3, 1991, held that the evidence presented failed to show that the truck was properly insulated and denied the motion for a new trial or to amend the judgment but extended to July 19, 1991 the time for appellant to have the truck insulated.

Appellant EW filed a notice of appeal June 5, 1991.

Subsequently, in late June, 1991, appellant EW filed a motion for entry of final judgment and again attempted to show, this time through expert testimony, that the truck was properly insulated. An evidentiary hearing on this motion was held July 22, 1991, and the motion was denied.

On July 26, 1991, EW filed a motion for new trial or for reconsideration. Hearing on this motion was held August 6, 1991, and the motion was denied by order dated August 14, 1991.

Appellant EW filed a new notice of appeal August 16, 1991.

### Facts

The two consolidated cases grew out of a contract for the sale and delivery of a boom truck to be used for electrical contracting work in American Samoa. In CA No. 59-90, plaintiff-appellant EW Trucking Co., Inc. (EW) agreed to sell the truck to Bob Coulter (Coulter), doing business as South Pacific Equipment & Repair. Below, Coulter argued unsuccessfully that he was not the purchaser of the truck, but merely the agent for the actual purchaser, Coffin. The companion lawsuit involved a claim for shipping and storage of the truck.

The facts giving rise to the lawsuit are straightforward. The trial court found that Coulter had contacted EW to locate a boom truck and that, although EW knew that Coulter in turn intended to sell the truck to another person (Coffin, although EW never knew his identity), the contract for the truck was between EW and Coulter, and that Coulter

was obligated to pay the purchase price for the truck.[2] However, the court also found that a term of the contract between EW and Coulter was that the truck was to be insulated, since it was going to be used for electrical work in American Samoa.

After considering all the testimony and evidence, the trial court rendered its judgment, in relevant part, as follows:

1. In favor of EW against Coulter for the agreed-upon $37,000.60 purchase price of the truck, plus pre-judgment interest at six percent for a total of $41,501.90;

2. Against EW in favor of Coulter, requiring EW to satisfactorily insulate the boom truck within sixty days of judgment and, if EW failed to properly insulate the truck, allowing Coulter to rescind the contract;

3. In favor of Coulter against third-party defendant Coffin, the person who agreed to purchase the truck, in the amount of $54,975.43; and,

4. That execution of all money judgments would be stayed for sixty days, to allow EW time to insulate the truck.

In post-trial motions, appellant EW attempted to show that the judgment was in error in that the boom truck was already satisfactorily insulated for all its intended uses.

### Issues

1. Did the trial court err in finding that appellant EW breached its contractual obligation to appellee Coulter

---

[2] By the time the truck arrived in American Samoa, Coffin's attempt to obtain financing had apparently fallen through and Coulter was claiming that he was merely an agent for the true purchaser, Coffin, and thus was not responsible to EW for payment of the purchase price. As a result, no one paid the shipping charges or the subsequent storage charges. This led to the second lawsuit (which plays no part in this appeal), in which the shipping and stevedoring companies sued for their unpaid charges.

91

by supplying a bucket truck with an uninsulated or insufficiently insulated boom?

2. Did the trial court err by refusing to admit the testimony of the expert witness offered by appellant EW at the hearing on EW's motion for entry of final judgment?

3. Did the trial court err by holding that Coulter would be allowed to rescind the entire contract if EW did not satisfy that part of the judgment which required it to insulate the boom truck within sixty days of entry of judgment?

4. Should the trial court have awarded judgment in favor of appellant EW and against appellee Coulter for the full $2,500 storage costs, for EW's reasonable attorney fees, and for post-judgment interest at the legal rate?

## Standard of Review

The trial division's factual determinations are reviewed for "clear error." A.S.C.A. § 43.0801(b); see also Temengil v. Trust Territory of the Pac. Islands, 881 F.2d 647, 649 (9th Cir. 1989) (citing United States v. McConney, 728 F.2d 1195, 1199-04 (9th Cir. 1984) (en banc), cert. denied, 469 U.S. 824), cert. denied, 496 U.S. 925 (1990).

A finding is "clearly erroneous" when the entire record produces the definite and firm conviction that the court below committed a mistake. South Seas v. Sablan, 525 F. Supp. 1033, 1037 (D.N.M.I. 1981), aff'd, 691 F.2d 508 (9th Cir. 1982) (mem.). The reviewing court accords particular weight to the trial judge's assessment of conflicting and ambiguous facts. Id.

A trial court has broad discretion concerning the admissibility or exclusion of expert testimony, and its action will be sustained unless it is shown to be manifestly erroneous. Reno-West Coast Distribution Co. v. Mead Corp., 613 F.2d 722 (9th Cir. 1979), cert. denied, 444 U.S. 927.

## Analysis

92

1.  Did the trial court err in finding that appellant EW breached its contractual obligation to appellee Coulter by supplying a bucket truck with an uninsulated or insufficiently insulated boom?

In its May 6, 1991, decision, the trial court found in part:

> The evidence does not reflect, however, that [Coulter] knew or should have known that an uncertified truck was necessarily an uninsulated one. Indeed, it appears that both [Coulter] and EW assumed that the 1966 truck was in fact insulated until about two months after it had arrived in American Samoa, when an inspection by the local power authority appears to have revealed the contrary. . . . The weight of the evidence is to the effect that the boom is not insulated but that it can be insulated.

Appellant attempts to show by evidence offered (or proffered and not admitted) at post-trial hearings that the trial court erred when it ruled at the conclusion of trial that appellant EW was obligated under the contract to provide an insulated truck.[3] Appellant argues that the factual findings in the trial court's May 6, 1991, decision were "clearly erroneous" because the testimony of both appellee and Coffin "was not credible" and that Coulter's testimony was based on inadmissible hearsay. As to the latter contention, appellant does not cite this Court to any timely objection made to the allegedly inadmissible testimony. An appellate court is not obliged to search the record for error. See generally United States v. Kline, 922 F.2d 610 (10th Cir. 1990); Engdahl v. Department of Navy, 900 F.2d 1572, 1576 (Fed. Cir. 1990); National Commodity and Barter Assoc. v. Gibbs, 886 F.2d 1240, 1244 (10th Cir. 1989); Atwood v. Union Carbide Corp., 850 F.2d 1093 (5th Cir. 1988). As to the former assertion, the trial court is uniquely situated to determine credibility, having as it does the opportunity to observe the witnesses as they testify. This Court should not--and on these unsupported assertions of error cannot--substitute its judgment for that

---

[3] This issue is separate and distinct from the issue of whether appellant was able to prove to the court's satisfaction in post-trial hearings that the truck was in fact insulated properly, which issue is addressed infra.

made by the trier-of-fact at the conclusion of trial.

Appellant's claim of error is not persuasive.

2.   Did the trial court err by refusing to admit the testimony of the expert witness offered by appellant EW at the hearing on EW's motion for entry of final judgment?

At the hearing on appellant's August 6, 1991, motion for new trial or for reconsideration, appellant sought to introduce, through its expert witness, Mr. Malcolm, that tests performed on the boom truck by a Mr. McCormick in June, 1991, proved that the truck was properly insulated.  In declining to allow Mr. Malcolm to offer an expert opinion based on the tests conducted by Mr. McCormick, the court stated:

> There was no evidence as to the qualifications of Mr. McCormick and the court is hesitant to allow a witness to determine safety certification of the insulated boom in this case by use of a hypothetical.  It is important that the court have the opportunity in a case involving special expertise and knowledge to examine the qualifications of the expert witness and examine his methods of testing the insulation of a boom on a truck to determine whether or not the boom retains a high insulation quality within acceptable standards when used near high voltage lines.

The court also noted that appellant could have supplied such background information by memorializing it in deposition form when Mr. McCormick was present in American Samoa.   The court expressly considered and rejected (and in our opinion rightly so) appellant's suggestion that the court be more flexible on this issue due to the general unavailability of expert witnesses in American Samoa.

We cannot say that the trial court committed manifest error by refusing to allow Mr. Malcolm to offer an expert opinion, couched in terms of a hypothetical question, and based upon test results of a person whose qualifications were never properly presented to the court.  This is particularly so when the trial court knew that its final decision on the safety of the truck might literally be a matter of life and death.

3.   Did the trial court err by holding that Coulter

would be allowed to rescind the entire contract if EW did not satisfy that part of the judgment which required it to insulate the boom truck within sixty days of entry of judgment?

In its decision, the trial court, after reviewing the facts and the law, stated:

> Under these circumstances, and in the absence of any dimension of malice or wilfulness in either party's breach, the most appropriate remedy is to give each party the benefit of the bargain to which it agreed and was entitled. EW is entitled to the contract price . . . ; [Coulter] is entitled to a truck that conforms to all terms of the contract, including the requirement of an insulated boom.
>
> . . . .
>
> Judgment will enter against plaintiff EW Truck & Equipment requiring it to insulate the boom on the truck within sixty days. If plaintiff EW should fail to comply with this part of the judgment, defendant Coulter will have the right to rescind the contract of sale.

19 A.S.R.2d 61, 64, 66 (1991).

Earlier, the trial court had noted that "[a]lthough we have no evidence of what it will cost to insulate the truck, we do have evidence that the cost will not be commercially unreasonable in relation to the contract price." Id. at 64.

The trial court utilized a "substantial performance" analysis in rendering its decision, and the remedy it fashioned sought to give EW the benefit of its bargain (the contract price for the truck), minus an appropriate reduction for its breach regarding the insulation. See 3A Corbin, Contracts §§ 709, 710, 994 (1960). We find no error in this analysis. However, the court placed upon appellant the duty to prove the truck was adequately insulated and upon itself the responsibility for making the determination of whether or not the insulation was adequate. The buyer of the truck, who seems more properly the party to be concerned with the safety of the truck, was not to be involved in this determination.

95

As a practical matter, we believe the burden of determining the safety of the truck should be placed on the party most directly interested and best able to ensure that the truck is indeed safe for its intended use: the buyer, Coulter. Therefore, we hereby remand this matter to the Trial Division for amendment of its judgment. Because the trial court found that the truck could be insulated in a commercially viable manner, it is our direction that the judgment be amended to require appellee Coulter, within sixty days of the amendment, to have the truck insulated to his satisfaction, and to deduct the reasonable charges of such work from the amount owing to appellant EW on the date of the trial division's initial judgment, that being $41,501.90.[4] This amendment also frees the trial court from having to make a decision requiring expertise perhaps not available to it despite the best efforts of appellant. Likewise, it frees appellant from the task of having to prove compliance with the court's judgment when appellant, too, might not have sufficient expertise available to it to make such a showing. Finally, it renders moot the question of rescission.

> 4. Should the trial court have awarded judgment in favor of appellant EW and against appellee Coulter for the full $2,500 storage costs, for EW's reasonable attorney fees, and for post-judgment interest at the legal rate?

Appellant argues that the trial court erred by ordering the parties each to pay half of the $2,500 storage fee for the truck, to pay their own attorney fees, and by not awarding post-judgment interest at the legal rate. Appellant maintains that the evidence at trial shows that it had a contractual right to attorney fees if it prevailed in any litigation against appellee and that the contract also required appellee to pay shipping and

---

[4] This appears to be the most equitable resolution, since it would be unfair to now require Coulter not only to insulate the truck but also to pay accrued interest for the time since the trial court's initial judgment. Post-judgment interest shall accrue on the new figure (i.e. $41,501.90 minus the reasonable cost of insulating the truck) from the date of the Trial Division's initial judgment to that of the final payment by appellee Coulter to appellant EW.

all other costs, such as taxes and storage charges.[5]

Because we agree with the trial court's assessment that both parties breached their contract, we affirm its decision in equity requiring the parties to share equally the expense of storage and to pay their own attorney fees.

As to the award of post-judgment interest, appellant argues that the court awarded it verbally but failed to include it in the final judgment. The court's order of May 6, 1991, does include pre-judgment interest at the legal rate, but no mention is made of post-judgment interest. The record does not reflect any motion by appellant to amend the judgment. However, we order that the judgment also be amended to specifically include interest at the legal rate of six percent from the date of judgment, in accordance with A.S.C.A. § 28.1501(a).

Conclusion

FOR THE REASONS STATED ABOVE, the decision of the Trial Division is AFFIRMED, but the judgment will be amended 1) to require appellee Coulter to properly insulate the truck within sixty days of amendment, 2) to allow appellee Coulter to deduct the reasonable cost of insulating the truck from the amount owing appellant EW at the time of the Trial Division's original judgment, and 3) to award appellant post-judgment interest (on the judgment amount of $41,501.90, minus the amount reasonably necessary to insulate the truck, with interest again accruing on the latter figure from the date of the Trial Division's decision to the date of final payment by Coulter to EW) in accordance with the Trial Division's oral ruling and the law.

---

[5] Appellee at the conclusion of its brief requests this Court to require appellant to reimburse appellee $12,168 for shipping charges appellee paid to South Seas Shipping. This matter is not properly before the Court and should have been the subject of a timely cross-appeal.