**Anthony P. LOCRICCHIO,**
**Plaintiff–Appellee/Cross–Appellant,**

v.

**LEGAL SERVICES CORP., et al.,**
**Defendants–Appellants/Cross–Appellees.**

**Nos. 86–2042, 86–2066.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 17, 1987.

Decided Dec. 9, 1987.

Jeremiah J. Kenney, Pamela Hobbs, Kitch, Saurbier, Drutchas, Wagner & Kenney, P.C., Detroit, Mich., for plaintiff-appellee/cross-appellant.

Lawrence R. White, Las Cruces, N.M., for defendants-appellants/cross-appellees.

Before KOELSCH, SNEED and TANG, Circuit Judges.

SNEED, Circuit Judge:

Anthony P. Locricchio sued the Legal Services Corporation (LSC) and certain of its employees, alleging interference with contract, defamation, interference with prospective contract, and intentional infliction of emotional distress. A jury awarded Locricchio $537,500. The district court granted judgment notwithstanding the verdict (JNOV) as to interference with prospective contract and accordingly reduced the award to $337,500. The district court also awarded Locricchio post-judgment interest. The litigants appeal and cross-appeal from virtually every aspect of the final judgment. We affirm in all respects.

## I.

### FACTS AND PROCEEDINGS BELOW

From July 1, 1974 until September 23, 1978, Locricchio was the Executive Director of the Legal Aid Society of Hawaii (LASH). At the time he was terminated, Locricchio had an employment contract that ran until July 1, 1980 and could be terminated only for cause. LASH is a Hawaii non-profit corporation organized to provide legal counsel to the indigent. It receives 5% of its funds from private contributions, 45% from the Hawaii State Legislature, and 50% from LSC. LSC is a District of Columbia non-profit corporation. Jurisdiction is based on diversity.

This dispute has its origin in disagreements that arose between Locricchio and LASH staff in January 1978. It appeared that some LASH employees and perhaps Locricchio were misappropriating funds. Locricchio criticized LASH attorneys for their small caseloads. Fifty attorneys and staff employees of LASH signed a petition asking Locricchio to resign. Locricchio fired five attorneys. The Board of Directors of LASH placed Locricchio on administrative leave with full pay and benefits.

The Board organized hearings to review the charges against Locricchio. Meanwhile, LSC undertook its own investigation. It hired the accounting firm of Price Waterhouse to investigate charges of financial wrongdoing. Price Waterhouse prepared a report that, among other things, described the charges against Locricchio without saying whether they were true or false.

The Board's hearings began on March 21, 1978. A former Hawaii Supreme Court justice was the hearing officer. Locricchio and his lawyer stopped attending the hearings before the staff presented all of its

charges against Locricchio. Shortly thereafter, a car struck and injured the hearing officer. The hearings were postponed while he recuperated. They resumed on August 14, but Locricchio did not attend. His lawyer moved for a continuance, which was denied. The hearing ended without Locricchio's having presented his case.[1]

Before the hearings ended, Charles Jones, then director of LSC's Office of Field Services, sent a telegram dated July 19 to the Board of LASH. The telegram described the history of financial mismanagement at LASH and referred to the Price Waterhouse report. It demanded that Locricchio and others be removed as a condition of further funding.

On September 5, the hearing officer issued his findings of fact. They described the relationship between Locricchio and his staff as "irretrievably broken" and criticized Locricchio for poor management and fiscal abuses. On September 23, the Board voted unanimously to terminate Locricchio's employment contract.

Locricchio filed this lawsuit against LSC on August 6, 1980. Its progress was languid. Not until April 12, 1983 did Locricchio file interrogatories and a request for documents. LSC for its part did not answer the interrogatories despite repeated requests. The district court imposed sanctions limiting LSC's discovery. E.R. at 55–56. LSC moved for summary judgment on August 8, 1985. The court denied the motion on November 15. After trial, the jury awarded Locricchio $537,500: $87,500 for interference with contract, $200,000 for interference with prospective contract, $150,000 for defamation, and $100,000 in punitive damages. The court granted JNOV with respect to the interference with prospective contract claim, approved the rest

---

1. The parties disagree about why Locricchio did not participate more fully in the hearings. Locricchio and his lawyer originally walked out after declaring that the hearings were a sham. Excerpt of Record (E.R.) at 200–04. However, Locricchio might have wished not to jeopardize the suit that he had brought against LASH in state court by revealing his case at the hearings. Locricchio left for Europe with his family on July 8, while the hearing officer recuperated.

Locricchio received notice that the hearings would resume on August 14. He did not appear. Locricchio says that Charles Jones, an officer of LSC, summoned him to a meeting in Washington, D.C. on August 14 and assured him that the hearings would not proceed. E.R. at 30. The hearing officer believed that LASH had not authorized him to grant Locricchio a continuance.

of the award, and granted Locricchio post-judgment interest. LSC appealed, and Locricchio cross-appealed, from those aspects of the judgment adverse to each. We affirm in all respects.

## II.

## PARTIAL GRANT AND PARTIAL DENIAL OF JNOV

### A. *Standard of Review*

▉▉▉ LSC challenges the trial court's denial of its motion for JNOV as to the defamation and interference with contract claims.[2] Locricchio, in turn, objects to the trial court's grant of LSC's motion for JNOV on his interference with prospective advantage claim. We determine the propriety of a JNOV under the same standard as that employed by the district court: whether the evidence, viewed in the light most favorable to the non-moving party, permits only one reasonable conclusion with respect to the verdict. *Peterson v. Kennedy*, 771 F.2d 1244, 1252 (9th Cir.1985), *cert. denied*, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986). In reviewing the grant or denial of a motion for JNOV, we do not account for witness credibility, weigh evidence, or reach a different result simply because we feel it is more reasonable. *Rinker v. County of Napa*, 820 F.2d 295, 297 (9th Cir.1987).

### B. *LSC Challenge: Denial of JNOV with Respect to Interference with Contract Claim*

▉▉▉ LSC maintains that its conduct was justified and privileged. Its governing regulations do not support this. LSC is charged with attempting to achieve compliance with the Legal Services Corporation Act first "through informal consultation with the recipient [LASH]." 45 C.F.R. § 1618.5(a) (1986). When LSC determines that a recipient has failed to comply with the Act to such an extent that it warrants a

suspension of funding, LSC must serve a written preliminary determination of funding suspension upon the recipient with notice that the recipient can request an informal meeting to dispute the proposed suspension. 45 C.F.R. § 1623.4 (1986). The July 19 telegram ordered LASH to fire Locricchio or risk losing LSC funding. This command was not an attempt at informal consultation, nor was it a preliminary determination of funding suspension. It was an ultimatum. We agree with the jury that LSC acted beyond the scope of its governing regulations in demanding Locricchio's discharge.

▉▉▉ LSC insists that Locricchio must prove that a majority of the LASH board members were influenced by LSC in their decision to fire Locricchio. It relies on Hawaii's rule that an agency's decision is not vitiated by the vote of a member having an improper interest if the qualified majority of votes would have reached the same result. *Waikiki Resort Hotel, Inc. v. City & County of Honolulu*, 63 Haw. 222, 248–49, 624 P.2d 1353, 1371–72 (1981). However, this rule pertains to statutory disqualification, which is not an issue in this case. The rule is no authority for second-guessing the jury's determination that LSC influenced the LASH board's decision.

▉▉▉ Finally, LSC objects to Simon Rosenthal's testimony that LSC did not follow proper procedures in demanding that Locricchio be fired. The grounds for LSC's objection to the Rosenthal testimony are unclear from its brief. Nevertheless, the trial court did not abuse its discretion by permitting Rosenthal to testify about LSC procedures. *See Taylor v. Burlington N.R.R.*, 787 F.2d 1309, 1315–16 (9th Cir. 1986). Rosenthal was testifying from his years of experience with LSC. Reporter's Transcript (R.T.), vol. 10, at 57–68. The jury could appropriately weigh his testimo-

---

**2.** LSC also challenges the trial court's denial of directed verdict on these claims. An appeal does not lie from a denial of a motion for directed verdict. *May v. Watt*, 822 F.2d 896, 899 n. 1 (9th Cir.1987). In any event, our analysis of the denial of JNOV disposes of LSC's claim that a directed verdict was improperly denied. *See Peterson v. Kennedy*, 771 F.2d 1244, 1256 (9th Cir.1985), *cert. denied*, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986) (substantive analysis for directed verdict and JNOV are the same).

ny. Therefore, we affirm the trial court's denial of JNOV on this claim.

### C. *LSC Challenge: Denial of JNOV with Respect to Defamation Claim*

■ LSC also contends it was surprised by much of the defamation testimony because it did not conform to the pretrial statement. We will not reverse a trial court's decision to admit evidence absent an abuse of discretion and some showing of prejudice. *Kisor v. Johns–Manville Corp.*, 783 F.2d 1337, 1340 (9th Cir.1986). LSC did not suggest, far less show, how it was prejudiced.

■ LSC doubts whether a reasonable jury could find actual malice on the part of LSC employees who defamed Locricchio. Actual malice may be inferred. *Beamer v. Nishiki*, 66 Haw. 572, 586–87, 670 P.2d 1264, 1275 (1983). Our review of the trial record convinces us that there is ample evidence to support such an inference in this case.

### D. *Locricchio Challenge: Grant of JNOV on the Interference with Prospective Advantage Claim*

The trial court granted JNOV on the prospective advantage claim at the behest of LSC because Locricchio failed to show that LSC acted with the necessary intent to interfere with any *specific* prospective economic relationship. E.R. at 884. We agree. Even viewing the evidence and reasonable inferences drawn therefrom in the light most favorable to Locricchio, he did not sustain his burden of proving the necessary elements of tortious interference with prospective advantage.

■ The elements are: (1) the existence of an economic relationship between the plaintiff and a third party that has the probability of ripening into a future economic benefit to the plaintiff; (2) knowledge by the defendant of the existence of the relationship; (3) intentional acts by the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages proximately caused by the defendant's acts. *Buckaloo v.*

*Johnson*, 14 Cal.3d 815, 827, 122 Cal.Rptr. 745, 752, 537 P.2d 865, 872 (1975).

■ There are no cases to guide us in determining the extent of proof necessary to prevail on this claim under Hawaii law. The general trend of Hawaiian courts is to look to California law in the absence of Hawaiian authority. *In re Pago Pago Aircrash*, 525 F.Supp. 1007, 1021 (C.D.Cal. 1981). In our past decisions based on California law we have held that there must be "a 'colorable economic relationship' between the plaintiff and a third party with 'the potential to develop into a full contractual relationship.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 904 (9th Cir.1983) (quoting *Buckaloo v. Johnson*, 14 Cal.3d 815, 828–29, 122 Cal.Rptr. 745, 753, 537 P.2d 865, 873 (1975)). The prospective economic relationship need not take the form of an offer, but there must be specific facts proving the possibility of future association. *Id.*

■ This level of specificity was not met in the evidence Locricchio adduced at trial. Locricchio presented testimony that LSC told employers in the legal services community that their funding would be imperiled if they hired Locricchio. However, he failed to show any specific potential relationship with these employers that would have inured to his economic benefit but for LSC's wrongful interference. Danette Layford testified that Locricchio was ousted from some affiliation with a local legal services board because of LSC's threats to withdraw its funding. R.T., vol. 12, at 49–50. Nonetheless, Locricchio did not show how this operated to his economic detriment. Simon Rosenthal testified that the National Legal Aid and Defender's Association briefly considered Locricchio for a position but then declined to consider him further due to his alleged improprieties while at LASH. R.T., vol. 10, at 120–22. However, Locricchio offered no evidence to prove that LSC was aware of this potential relationship or acted to impede it. While Locricchio amply showed that LSC's action in firing him hindered his ability to obtain gainful employment elsewhere, he failed to prove that this inability was a direct result

of LSC's wrongful interference with his employment endeavors.

Locricchio cites several California cases for the proposition that the specific prospective economic relationship requirement be interpreted broadly. *See Blatty v. New York Times Co.,* 175 Cal.App.3d 571, 184 Cal.App.3d 1144, 221 Cal.Rptr. 236 (1985), *rev'd on other grounds,* 42 Cal.3d 1033, 232 Cal.Rptr. 542, 728 P.2d 1177 (1986) (relationship between author and prospective purchasers of listed bestsellers suffices); *Gold v. Los Angeles Democratic League,* 49 Cal.App.3d 365, 122 Cal.Rptr. 732 (1975) (relationship between candidate and voters who might vote for him suffices); *Greenberg v. Hollywood Turf Club,* 7 Cal.App.3d 968, 86 Cal.Rptr. 885 (1970) (relationship between employee and prospective employers in a partially monopolized business suffices). These cases involved the sufficiency of complaints, not the sufficiency of proof. More importantly, each of these cases involved a specific economic advantage which was denied to the plaintiff by the defendant's wrongful action. All that Locricchio has shown is that he was not able to obtain *any* job because of his bad reputation which was fostered by LSC's wrongful action.

Locricchio's damages in this claim are more accurately redressed under his defamation action. On that claim he was compensated for the damage to his reputation caused by LSC. To the extent that LSC acted egregiously in making general threats to withdraw funding from legal services operations that employed Locricchio, the jury's punitive damages award of $100,000 is compensation.

The trial court noted that Locricchio had not proven that LSC acted with the necessary motive required for a finding of tortious interference. R.T., vol. 18, at 55. We have held that tortious interference re-

quires a state of mind or motive more culpable than mere intent. *DeVoto v. Pacific Fidelity Life Ins.,* 618 F.2d 1340, 1347 (9th Cir.), *cert. denied,* 449 U.S. 869, 101 S.Ct. 206, 66 L.Ed.2d 89 (1980). Since we hold now that Locricchio failed to show any specific potential relationship with which LSC interfered, there is no need to approach the more difficult issue of assessing LSC's motive. We affirm the trial court's grant of JNOV on the interference with prospective advantage claim.

## III.

## DENIAL OF LSC'S MOTION FOR SUMMARY JUDGMENT

■ LSC asks this court to review the district court's *denial* of its motion for summary judgment. Immediately we confront the issue whether a denial of a motion for summary judgment is appealable following a jury verdict adverse to the mover. It is clear that a denial alone may not be immediately appealed under 28 U.S.C. § 1292(a)(1). *Switzerland Cheese Ass'n, Inc. v. E. Horne's Mkt., Inc.,* 385 U.S. 23, 25, 87 S.Ct. 193, 195, 17 L.Ed.2d 23 (1966). Also, the majority rule appears to be that the denial is not properly reviewable on an appeal from the final judgment entered after trial.[3] This position was recently adopted by the Federal Circuit in *Glaros v. H.H. Robertson Co.,* 797 F.2d 1564 (Fed. Cir.1986), *cert. dismissed,* — U.S. —, 107 S.Ct. 1262, 94 L.Ed.2d 194 (1987). The *Glaros* court reasoned that "[b]ecause the denial decided nothing but a need for trial and trial has occurred, the general and better view is against review of summary judgment denials on appeal from a final judgment entered after trial." *Id.* at 1573 n. 14. We agree.

---

3. *See* Annotation, *Reviewability of Federal Court's Denial of Motion for Summary Judgment,* 17 L.Ed.2d 886, 893–94 (1967); Annotation, *Reviewability of Order Denying Motion for Summary Judgment,* 15 A.L.R.3d 899, 922–25 (1967). *But see* 10 C. Wright, A. Miller, & M. Kane, *Federal Practice & Procedure* § 2715 n. 25 (1983). There is one Ninth Circuit case that seems to condone the propriety of reviewing a

summary judgment denial. *See Hilton v. Mumaw,* 522 F.2d 588, 603 (9th Cir.1975). However, in *Hilton* judgment was entered on a directed verdict, and thus the spectre of overturning a jury verdict based on an improper denial of summary judgment was not presented. Moreover, the panel failed to specifically address the reviewability question. *Hilton,* therefore, has no application to the facts of this case.

To be sure, the party moving for summary judgment suffers an injustice if his motion is improperly denied. This is true even if the jury decides in his favor. The injustice arguably is greater when the verdict goes against him. However, we believe it would be even more unjust to deprive a party of a jury verdict after the evidence was fully presented, on the basis of an appellate court's review of whether the pleadings and affidavits at the time of the summary judgment motion demonstrated the need for a trial. After considerable research, we have found no case in which a jury verdict was overturned because summary judgment had been improperly denied. We hold, therefore, that the denial of a motion for summary judgment is not reviewable on an appeal from a final judgment entered after a full trial on the merits.[4]

## IV.

### DENIAL OF MOTION FOR NEW TRIAL

■ LSC challenges the trial court's denial of its motion for new trial which we review for an abuse of discretion. *Robins v. Harum*, 773 F.2d 1004, 1006 (9th Cir. 1985). LSC moved for a new trial first, on the ground that Locricchio introduced testimony that did not conform to his pre-trial

statement. The testimony was relevant to the issues raised in the pleadings, so the trial court was within its discretion in admitting it. Besides, LSC did not demonstrate prejudice.[5]

Second, LSC contests the evidentiary basis for the jury's award. We will not set aside the jury verdict unless, viewing the evidence in the light most favorable to that verdict, we can say that the court in denying the motion for a new trial abused its discretion. *Hard v. Burlington N.R.R.*, 812 F.2d 482, 486 (9th Cir.1987). We find the jury verdict supported by sufficient evidence.[6]

## V.

### EXCLUSION OF EVIDENCE

■ Locricchio objects to the trial court's decision to exclude evidence tending to show that LSC publicized the fact that his minor daughter had been a rape victim. We review a decision to exclude evidence under Fed.R.Evid. 403 for a clear abuse of discretion. *Coursen v. A.H. Robins Co.*, 764 F.2d 1329, 1333 (9th Cir.1985). Locricchio contends that this ruling prejudiced him with respect to his claim for intentional infliction of emotional distress, on which he did not recover. The trial court noted LSC's alleged conduct had little to do with the original premise of the lawsuit. E.R.

4. In any event, were we to consider this point on the merits, we would have no difficulty concluding that the district court's denial of LSC's motion for summary judgment was proper.

5. In its denial of the motion for new trial, the trial court noted that LSC could not show real prejudice from the alleged "surprise" evidence because the person who made the defamatory statements did not unqualifiedly deny making them. Hence, any continuance or rebuttal witnesses that LSC may have mustered to counter this testimony could never overcome the fact that the speaker did not deny making the defamatory statements. R.T., vol. 18, at 58–59.

6. LSC also argues that it should be able to offset certain payments made by LASH to Locricchio to settle a state court action arising out of Locricchio's interference with contract action against LASH. However, it appears from the record that the settlement between LASH and Locricchio involved several claims and that the settlement amount was not broken down into a

specific dollar figure given on each underlying claim. Therefore, we are not in a position to evaluate the merits of this offset issue. The only authority cited by LSC is Restatement (Second) of Torts § 774A, which states that damages paid by a third party on an interference with contract claim will reduce the total damages actually recoverable in a later judgment for the plaintiff on that claim. The other pertinent provisions of Restatement § 774A state, however, that damages are recoverable in excess of mere compensation for the breach of contract and can go to consequential losses and emotional distress. Restatement (Second) of Torts § 774A(1) (1977); *see also Duff v. Engelberg*, 237 Cal.App.2d 505, 47 Cal.Rptr. 114 (1965) (plaintiff sued seller who had unlawfully rescinded contract for sale of real property and received specific performance; plaintiff then sued neighbors who had induced seller to breach and recovered monetary damages). Here, we are convinced that Locricchio did not make a windfall in double-recovery by our refusal to consider an offset.

at 13. It excluded the evidence on the grounds that it would confuse the issues and unfairly prejudice LSC. Fed.R.Evid. 403. We find that the trial court exercised its discretion soundly in excluding this inflammatory evidence.

## VI.

### DENIAL OF PREJUDGMENT INTEREST AND ATTORNEYS' FEES

A. *Prejudgment Interest*

 Hawaii law gives the trial court discretion to designate the date for commencement of interest. Haw.Rev.Stat. § 636–16 (1985). Therefore, we will reverse only for an abuse of discretion. *See Columbia Brick Works, Inc. v. Royal Ins. Co. of Am.*, 768 F.2d 1066, 1068 (1985). In its denial of prejudgment interest, the trial court noted that it was Locricchio's dilatoriness that accounted for much of the delay in rendering judgment. Locricchio countered with a request for interest commencing April 12, 1983—the date he filed his first interrogatories. It was within the discretion of the trial court to reject this compromise and to award interest commencing on the date of judgment.

B. *Attorneys' Fees*

 Hawaii follows the traditional American rule that attorneys' fees are not recoverable. *Rosa v. Johnston*, 3 Haw. App. 420, 430, 651 P.2d 1228, 1236 (1982). Locricchio argues that the court ought nevertheless to have awarded attorneys' fees because LSC acted in bad faith. *See Hall v. Cole*, 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973). We review for clear error the trial court's finding that LSC's conduct did not meet the bad faith standard. *Beaudry Motor Co. v. Abko Properties, Inc.*, 780 F.2d 751, 756 (9th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 100, 93 L.Ed.2d 51 (1986).

 The trial court's finding that LSC did not act in bad faith is based on a review of the five-year history of this litigation. We find the court's holdings and rulings in this regard highly persuasive. Therefore, we affirm the trial court's denial of prejudgment interest and attorneys' fees.

AFFIRMED.