FILED

MAY 29 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No. NC-11-1566-JuKiJo |
| | ) | |
| BILL MARTIN PARKER, | ) | Bk. No. 09-43245 |
| | ) | |
| Debtor. | ) | Adv. No. 09-04301 |
| _____ | ) | |
| | ) | |
| ALBERT P. WILCOX, | ) | |
| | ) | |
| Appellant, | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| BILL MARTIN PARKER, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on May 17, 2012
at San Francisco, California

Filed - May 29, 2012

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Roger L. Efremsky, Bankruptcy Judge, Presiding

_____

Appearances:    Andrew Steinfeld, Esq. argued for appellant
                Albert P. Wilcox; Richard C. Raines, Esq.,
                argued for appellee Bill Martin Parker.

_____

Before: JURY, KIRSCHER, and JOHNSON,[1] Bankruptcy Judges.

--------

[1] Hon. Wayne E. Johnson, Bankruptcy Judge for the Central District of California, sitting by designation.

JURY, Bankruptcy Judge:

Appellant-creditor, Albert P. Wilcox ("Wilcox"), appeals the bankruptcy court's order denying his motion for summary judgment on a § 523(a)(2)(A)[2] fraud claim against chapter 7 debtor, Bill Martin Parker ("Parker"). This appeal follows a trial on the merits on the fraud claim with judgment entered in favor of Parker and Wilcox's claim found dischargeable. We AFFIRM.

## I. FACTS

Parker is a real estate broker. He also was the owner and principal officer of BT Investment & Loan, Inc. ("BT Investments"), a company which facilitated hard money loans for purchasers of real estate.

On November 13, 2006, BT Investments acted as the broker for a $290,000 loan made by Wilcox, a retiree, to Mark and Kathleen Taylor (the "Taylors") in connection with the Taylors' purchase of real property located on 65th Street, Sacramento, California.[3] The loan was secured by trust deeds encumbering the property on 65th Street and the Taylors' family residence

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

[3] Mark Taylor owned a construction company and purchased properties to rehabilitate them and sell for a profit. The Taylors had worked with Parker and BT Investments for over four years, obtaining up to fifteen loans during that time frame.

located on Grant Street in Brentwood, California.

On May 17, 2007, BT Investments acted as the broker for two additional loans made by Wilcox to the Taylors for $120,000 and $230,000. These loans were for the renovation of property located on Beatrice Street in Brentwood, California. Both loans were secured by trust deeds encumbering the Beatrice property. The $230,000 loan was also secured by a trust deed encumbering the Taylors' family residence on Grant Street.

### The State Court Litigation

The Taylors did not repay their loans to Wilcox. On November 23, 2008, Wilcox filed a lawsuit against Parker, BT Investments and Parker's wife (collectively, "Parker"), Wilcox v. Parker, et al., in the Contra Costa Superior Court (Case No. C08-00149) (the "State Court Action"). On March 12, 2008, Parker filed a cross-complaint against the Taylors for equitable indemnity and declaratory relief.[3]

### The Taylors' Bankruptcy

About two months later, on May 15, 2008, the Taylors filed their chapter 7 petition. On August 18, 2008, Parker filed an

---

[3] Cal. Code of Civ. Proc. § 428.10(b) states:

A party against whom a cause of action has been asserted in a complaint or cross-complaint may file a cross-complaint setting forth . . . [a]ny cause of action he has against a person alleged to be liable thereon, whether or not such person is already a party to the action . . . .

Under this section, a defendant may file a cross-complaint against any person from whom he seeks indemnity. Daon Corp. v. Place Homeowners Assn., 255 Cal. Rptr. 448, 451 (Cal Ct. App. 1989).

adversary proceeding against the Taylors asserting claims for relief under § 727(a)(2), (3), and (4) and § 523(a)(2).[4] With respect to the § 523(a)(2) fraud claim, Parker alleged that the Taylors provided him with false information so that they could obtain the loans from Wilcox. Parker further alleged that the Taylors misrepresented the status of their other loans and financial condition. In the prayer for relief on the fraud claim, Parker sought equitable indemnification from the Taylors for any damages arising out of their fraudulent actions in obtaining the loans in the event Parker was found liable for the Taylors' obligation in the State Court Action.

The Taylors did not answer the complaint. On September 29, 2008, the clerk of the court entered a default against them. Parker then filed an application for entry of a default judgment. On February 17, 2009, the bankruptcy court entered a default judgment against the Taylors, denying them a discharge under § 727. On the § 523 fraud claim, the judgment provided:

> Defendants shall be obligated to indemnify and to repay Plaintiffs for any monetary damage award entered against Plaintiffs (if any) in accordance with a final judgment in the State Court Action in Contra Costra Superior court, Case Number C08-00149, Wilcox v. Parker, et al. . . . To the extent that Defendants do not indemnify and repay Plaintiffs, as required by this Judgment, Plaintiffs may pursue Defendants and each of them for repayment of any sums that Plaintiffs and each of them are obligated to pay in the State Court Action, in accordance with this Judgment.

---

[4] We have taken judicial notice of the pleadings which were docketed and imaged in In re Taylor, Bankruptcy Case No. 08-42427 and the related adversary proceeding, Parker v. Taylor, Adv. No. 08-4239. Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

-4-

Shortly thereafter, the Taylors moved to set aside the default judgment. On April 29, 2009, the bankruptcy court entered a conditional order setting the default judgment aside which required the Taylors to pay Parker's attorneys' fees. After the Taylors provided proof of payment of the court-approved fees, the court entered a final order setting aside the default on March 8, 2010.

On June 2, 2011, Parker filed a motion for summary judgment ("MSJ") on the § 727 claims against the Taylors. On June 3, 2011, Parker voluntarily dismissed the § 523(a)(2) claim.[5] The bankruptcy court denied Parker's MSJ.

After amending his complaint, Parker abandoned his pursuit of the Taylors. On November 2, 2011, the bankruptcy court dismissed the adversary proceeding for lack of prosecution. On November 18, 2011, the adversary proceeding closed.

### Parker's Bankruptcy

Meanwhile, on April 20, 2009, just prior to the bankruptcy court's conditional set aside of Parker's default judgment against the Taylors, Parker filed his chapter 7 petition. Parker's Schedule F showed $1,037,000 in unsecured debt with $1 million of that amount attributed to his potential liability to Wilcox in the State Court Action.

On July 20, 2009, Wilcox filed an adversary proceeding against Parker alleging claims for relief under §§ 727 and

---

[5] By this time, as further discussed below, the bankruptcy court had found after a trial that Parker did not have the requisite intent to defraud Wilcox.

523(a)(2). Wilcox filed an MSJ on all claims for relief. With respect to the § 523(a)(2)(A) fraud claim, Wilcox sought summary judgment on judicial estoppel grounds based on the default judgment Parker had obtained in the Taylors' bankruptcy case. According to Wilcox, Parker could only obtain a judgment for equitable indemnity if he was jointly and severally liable with the Taylors for fraud. Therefore, Wilcox reasoned that Parker's application for entry of the default judgment and the judgment itself constituted Parker's admission that he had committed fraud against Wilcox.

On November 19, 2010, the bankruptcy court entered its order denying Wilcox's MSJ. On the § 523(a)(2)(A) fraud claim, the court found that there was a genuine dispute on the issue of Parker's intent to defraud Wilcox.[6]

The bankruptcy court bifurcated the trial into two phases. In the first phase, the bankruptcy court would decide the fraud claim under § 523(a)(2)(A), and in the second phase the court would decide the § 727 claims for relief. On December 3, 2010, Wilcox filed a motion for leave to appeal the interlocutory order denying his MSJ with the bankruptcy court. In that

---

[6] In support of his MSJ, Wilcox evidently included a letter from the California Department of Real Estate (the "DRE") that found Parker had an obligation to disclose the fact that his wife had a senior trust deed on one of the properties that Wilcox loaned money on. That letter is not part of the record on appeal. However, from what we can tell, the DRE found Parker was negligent or incompetent and that he was overly optimistic that the transaction would be successful. Hr'g Tr. November 4, 2010 at 10:9-13. Although the bankruptcy court referred to that factual issue in denying the § 523(a)(2) MSJ, it made no reference whatsoever to the judicial estoppel argument.

motion, Wilcox stated that the issue for appeal was whether the doctrine of judicial estoppel should apply to bar Parker from denying his liability to Wilcox for fraud. Wilcox also moved to stay the trial pending appeal.

On December 13, 2010, the bankruptcy court held a trial on the § 523(a)(2)(A) claim. At that hearing, the court denied Wilcox's motion for leave to appeal.[7] Ultimately, the court ruled in Parker's favor, finding that the alleged debts owed to Wilcox were discharged. On April 4, 2011, the bankruptcy court entered judgment for Parker on the § 523(a)(2)(A) fraud claim.

On September 28, 2011, the bankruptcy court entered the order granting Wilcox's motion to dismiss the remaining claims under § 727. At that point, the interlocutory order denying Wilcox's MSJ on the § 523(a)(2) claim merged into the final judgment disposing of Wilcox's claim under § 523(a)(2). United States v. Real Prop. Located at 475 Martin Lane, Beverly Hills, Cal., 545 F.3d 1134, 1141 (9th Cir. 2008) (under merger rule interlocutory orders entered prior to the judgment merge into the judgment and may be challenged on appeal).

On October 6, 2011, the adversary proceeding closed. On the same day Parker was granted a discharge.

On October 11, 2011, Wilcox timely appealed the bankruptcy court's order denying his MSJ.

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding

---

[7] Wilcox was required to seek leave to appeal the interlocutory order from this Panel under Rule 8003(b).

-7-

under 28 U.S.C. §§ 1334 and 157(b)(2)(I).  We have jurisdiction under 28 U.S.C. § 158.

### III.  ISSUE

Did the bankruptcy court err in denying Wilcox's MSJ on judicial estoppel grounds?

### IV.  STANDARD OF REVIEW

We review de novo the bankruptcy court's denial of a motion for summary judgment.  Padfield v. AIG Life Ins. Co., 290 F.3d 1121, 1124 (9th Cir. 2002).

### V.  DISCUSSION

We first consider whether review of the order denying Wilcox's MSJ is appropriate under these circumstances. Generally, the denial of a motion for summary judgment is not reviewable on appeal after a full trial and final judgment on the merits of the case.  Lum v. City and Cnty. of Honolulu, 963 F.2d 1167, 1170 (9th Cir. 1992); Locricchio v. Legal Servs. Corp., 833 F.2d 1352, 1358 (9th Cir. 1987); see also Allahar v. Zahora, 59 F.3d 693, 695 (7th Cir. 1995) ("Once a trial has been completed and all the facts presented, it is almost always immaterial whether or not summary judgment should have been granted at an earlier point in the proceedings.").  In Locricchio, the Ninth Circuit explained the rationale for the rule:

> To be sure, the party moving for summary judgment
> suffers an injustice if his motion is improperly
> denied.  This is true even if the jury decides in his
> favor.  The injustice arguably is greater when the
> verdict goes against him.  However, we believe it
> would be even more unjust to deprive a party of a jury
> verdict after the evidence was fully presented, on the
> basis of an appellate court's review of whether the

-8-

pleadings and affidavits at the time of the summary judgment motion demonstrated the need for a trial.

833 F.2d at 1359. However, the rule does not apply to denials of summary judgment motions "where the [bankruptcy] court made an error of law that, if not made, would have required the [bankruptcy] court to grant the motion." Banuelos v. Const. Laborers' Trust Funds for S. Cal., 382 F.3d 897, 902 (9th Cir. 2004).

Here, the bankruptcy court did not make any findings on Wilcox's judicial estoppel theory. However, the record shows that the question of whether the doctrine of judicial estoppel applied did not concern disputed factual issues that were later addressed at trial. Indeed, the record reveals that the only disputed issues of material fact for trial were whether Parker had the requisite intent to defraud Wilcox and whether Wilcox justifiably relied on material misrepresentations which resulted in damage. Thus, the bankruptcy court implicitly decided the question of whether judicial estoppel applied under these facts as an issue of law. Accordingly, the court's denial of summary judgment had the effect of ending any further consideration of Wilcox's judicial estoppel theory.[8]

Moreover, had the bankruptcy court applied the doctrine of

_____

[8] Parker also argues that Wilcox waived his claim of judicial estoppel for purposes of appeal because he never referred to it at trial, did not adduce any testimony relating to detriment or unfair advantage, did not introduce any documentary evidence on the issue and never sought a ruling by the trial court on the issue at trial. For the same reasons noted above, we conclude that Wilcox did not waive the issue for purposes of this appeal.

-9-

judicial estoppel on the issue of Parker's fraud, that ruling would have negated the need for a trial on the issue. Under these circumstances, we find it appropriate to review the order denying Wilcox's MSJ under our traditional de novo review.

## Judicial Estoppel

We now consider whether the doctrine of judicial estoppel applies to the undisputed facts as a matter of law. "Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." Whaley v. Belleque, 520 F.3d 997, 1002 (9th Cir. 2008). It is "an equitable doctrine invoked by a court at its discretion," N.H. v. Maine, 532 U.S. 742, 750 (2001), and "is intended to protect the integrity of the judicial process by preventing a litigant from playing fast and loose with the courts." Whaley, 520 F.3d at 1002.

In deciding whether judicial estoppel should be applied, we typically consider three elements: "(1) whether a party's later position is 'clearly inconsistent' with its original position; (2) whether the party has successfully persuaded the court of the earlier position, and (3) whether allowing the inconsistent position would allow the party to 'derive an unfair advantage or impose an unfair detriment on the opposing party.'" United States v. Ibrahim, 522 F.3d 1003, 1009 (9th Cir. 2008); see also Cheng v. K&S Diversified Invs., Inc. (In re Cheng), 308 B.R. 448, 452-3 (9th Cir. BAP 2004).

Before moving on to the determination as to whether these

-10-

elements have been met, we briefly address Wilcox's reasoning to support application of judicial estoppel under this set of facts. His argument goes like this:

(1) A judgment based on equitable indemnity was not available to Parker absent his joint and several liability with the Taylors;

(2) The judgment Parker obtained against the Taylors presupposes joint liability for fraud;

(3) Ergo, Parker's judgment against the Taylors based on equitable indemnity constitutes a judicial admission of Parker's liability for fraud.

Wilcox's major premise is correct: equitable indemnity is only available among tortfeasors who are jointly and severally liable for the plaintiff's injury. Leko v. Cornerstone Bldg. Inspection Serv., 103 Cal. Rptr. 2d 858, 863 (Cal. Ct. App. 2001). The key here is that there can be no indemnity without liability. Only when the indemnitee is found responsible for the acts of the indemnitor does the obligation to indemnify apply. Restatement (Second) of Torts § 886B(1) (1979) ("If two persons are liable in tort to a third person for the same harm and one of them discharges the liability of both, he is entitled to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of the liability."). However, as discussed below, the rest of Wilcox's analysis fails because his minor premises are incorrect.

Our independent review of Parker's application for entry of default in the Taylors' adversary and the default judgment itself show that Parker asserted a conditional, or contingent

-11-

claim for common law indemnity against the Taylors. We characterize Parker's equitable indemnity claim as conditional because, on the one hand, Parker denied that he was liable for any of the claims Wilcox may have asserted against him. Yet, on the other hand, Parker asserted that he could incur liability for the Taylors' debt and, if so, the Taylors should be required to equitably indemnify him due to their fraud. The plain language of the default judgment shows that the Taylors' obligation to indemnify Parker and repay him was conditional[9] on Wilcox obtaining a monetary damage award against Parker in the State Court Action. Accordingly, the conditional nature of the judgment does not, as Wilcox puts it, "presuppose" Parker's fraud.

It follows then that the judgment cannot constitute a judicial admission by Parker that he committed fraud. "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." Am. Title Ins. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988). There are no formal admissions in the record before us. At all times, Parker denied he was liable for the claims Wilcox asserted against him.

Due to the conditional nature of Parker's claim for equitable indemnity the doctrine of judicial estoppel has no application under this set of facts. There is no "conflict" between the default judgment that Parker obtained in the

---

[9] Generally, conditional judgments are not final under Civil Rule 54(a), incorporated by Rule 7054, until the contingency has been removed. Wright, Miller & Cooper, 15B Federal Practice and Procedure § 3915.3 (2nd ed. 1998).

-12-

Taylors' bankruptcy and the judgment in favor of Parker at issue in this appeal. Further, the record does not reveal any inconsistencies in Parker's position.

Wilcox also failed to establish judicial estoppel based on the success element. There is nothing in the record that shows Parker was asserting a vested right to indemnification against the Taylors based on his admission of fraud. Accordingly, by entering the conditional judgment, the bankruptcy court could not have "accepted" the position that Wilcox advocates.

Finally, we are hard pressed to conclude that Parker sought an unfair advantage by seeking equitable indemnity from the Taylors in their bankruptcy and then later defending himself in this nondischargeability proceeding. Parker obtained no advantage by obtaining the default judgment against the Taylors which was later set aside. In the end, the bankruptcy court held a trial on the issue of Parker's fraud where Wilcox had ample opportunity to cross examine Parker and other witnesses. A trial on the merits cannot be considered to impose an "unfair detriment" on Wilcox when, at the time of his MSJ, the record demonstrated the need for a trial.

Accordingly, we conclude that, as a matter of law, Wilcox failed to establish the elements necessary to support the application of the doctrine of judicial estoppel.

## VI. CONCLUSION

For the reasons stated, we AFFIRM. Wilcox's motion to

supplement the record is DENIED.[10]

[10]    On May 3, 2012, Wilcox filed a motion to supplement the record with the state court cross-complaint filed by Parker against the Taylors for indemnity and Parker's Schedule B listing his contingent claim against the Taylors.  On May 7, 2012, Parker objected to the inclusion of these documents in the record.  On that same day, the Panel issued an order stating that the motion would be considered along with the merits.  The documents included with the supplement were not presented to the bankruptcy court and therefore were not properly considered as part of the record on appeal.  They are not necessary to our ruling. Therefore, the motion is denied.

-14-