

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

|  |  |
|---|---|
| In re:<br>SWING HOUSE REHEARSAL AND<br>RECORDING, INC.; PHILIP JOSEPH<br>JAURIGUI,<br><br>                    Debtors. | BAP No.  CC-22-1218-GFS<br><br>Bk. No. 2:16-bk-24760-RK<br><br>Adv. No. 2:18-ap-01351-RK |
| PHILIP JOSEPH JAURIGUI,<br>                    Appellant,<br>v.<br>JONATHAN MOVER,<br>                    Appellee. | **MEMORANDUM**\* |

Appeal from the United States Bankruptcy Court
for the Central District of California
Robert N. Kwan, Bankruptcy Judge, Presiding

Before: GAN, FARIS, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtor Philip Joseph Jaurigui ("Debtor") was the founder,

majority shareholder, and chief executive officer of Swing House Rehearsal

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

and Recording, Inc. ("Swing House"), a company which offered rehearsal and recording services to musical artists. In 2014, Debtor solicited an investment from Appellee Jonathan Mover to facilitate the buildout of a new location. Mover advanced funds in exchange for a convertible note jointly payable by Swing House and Debtor and made a second loan which Debtor guaranteed.

In 2016, Debtor and Swing House filed chapter 11 petitions. The bankruptcy court subsequently converted Debtor's case to chapter 7 and, in the Swing House case, confirmed a chapter 11 plan proposed by Mover that provided for his purchase of the business. Mover then filed an adversary complaint to hold his debt against Debtor nondischargeable based on false representations and omissions related to Swing House's business and its ability to operate as a recording studio in the new location. After trial, the court entered a nondischargeable judgment pursuant to § 523(a)(2)(A), (a)(2)(B), and (a)(6).

On appeal, Debtor argues that Mover should be judicially estopped from arguing that Swing House was not legally permitted to operate a recording studio in the new location because Mover made certain statements in his approved disclosure statement which Debtor argues were contrary to Mover's allegations in the complaint. Debtor claims that the allegations constitute fraud on the court by Mover and his attorney. He also questions the sufficiency of evidence and argues the court erred by finding the debt nondischargeable.

2

Debtor did not assert an estoppel defense or claim of fraud on the court in the bankruptcy court, and he cannot do so on appeal. Moreover, Debtor does not demonstrate that either doctrine is applicable here. The bankruptcy court's decision is supported by the evidence in the record and is not clearly erroneous. Accordingly, we AFFIRM.

## FACTS[2]

### A.    Prepetition events

Debtor incorporated Swing House in 2000 and, until 2018, he was its majority shareholder, chief executive officer, and president. In 2001, Debtor relocated Swing House from a small facility in Hollywood, California to a larger facility located on Willoughby Avenue in Los Angeles, California ("Willoughby"). According to Debtor, Willoughby needed to be completely remodeled for use as a music rehearsal and recording facility. Debtor stated that Swing House consulted with the contractor, architect, and city inspectors and was informed that a "sound score production" permit would allow for the broadest use of the location, including holding rehearsal and recording sessions for film, television, and the internet.

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the jointly administered bankruptcy cases and adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003). Debtor moved to augment the record to include the disclosure statement filed in the Swing House case. Although the disclosure statement was not part of the record in the adversary proceeding, the bankruptcy court referred to the confirmed plan in the Swing House case and was aware of those proceedings. We grant the motion.

Swing House obtained the sound score production permit and operated as a rehearsal space and a recording studio at Willoughby until 2013.

In 2013, Debtor decided to find a new location for Swing House because of an expected increase in rent upon expiration of the Willoughby lease and a desire to expand the business. He located a warehouse on Casitas Avenue, Los Angeles, California ("Casitas") which required extensive construction to convert it to a rehearsal and recording facility.

In February 2014, Swing House signed a lease for Casitas. At the time, Debtor knew that Casitas was not zoned for use as a recording studio but was zoned MR-1 for use as a warehouse. On February 17, 2014, Swing House executed a construction contract for work to be performed at Casitas. The contract provided for a construction budget of $880,000 and a construction management fee not to exceed $200,000.

Debtor then approached Mover and D'Addario & Co., Inc. ("D'Addario"), a privately held company that manufactures musical instrument strings and accessories, about investing in Swing House. On February 19, 2014, Debtor transmitted to Mover and D'Addario a Confidential Private Offering Memorandum ("Offer Memo"), which solicited a total investment of $900,000 through sales of common stock or convertible notes.

The Offer Memo described Swing House's business operations, financial information, and plan to relocate to Casitas. It stated that Swing House operated as a rehearsal space and recording studio and generated

4

additional income from management of artists, event production, and equipment rentals. Regarding the proposed move to Casitas, the Offer Memo stated that buildout of the facility would require $736,500, which would be supplemented by an allowance for tenant improvements of $218,000.

In July 2014, Mover advanced $150,000 in exchange for a convertible note jointly payable by Swing House and Debtor (the "Mover Note").[3] Prior to executing the Mover Note, Debtor signed a first amendment to the construction agreement which increased the total construction budget to $1,425,000. Debtor did not inform Mover of the increased budget.

Swing House did not timely vacate Willoughby at the expiration of its lease and defaulted in August 2014. The landlord of Willoughby, 7175 WB, LLC ("7175"), ultimately filed suit in state court seeking damages of over $900,000. Debtor did not notify Mover that Swing House had defaulted on the Willoughby lease.

In September 2014, Debtor informed Mover that Swing House required an additional $50,000 to complete the recording studio at Casitas. Mover loaned Swing House $50,000, which Debtor personally guaranteed. Swing House did not build the recording studio at Casitas.

At the end of September 2014, Swing House and Debtor executed a second amendment to the construction agreement, providing for additional

---

[3] D'Addario also made an investment of $500,000 in exchange for a convertible note. The Mover Note was subordinated to the D'Addario note.

compensation to the construction manager of $5,500 for each additional week he remained on the project.

Swing House obtained an additional loan of $250,000 from Jim D'Addario, the president of D'Addario, and received the Certificate of Occupancy in April 2015 after spending over $1,800,000. The Certificate of Occupancy was issued for "sound score production," and the application for the building permit and certificate of occupancy stated: "Bldg. shall not be used for recording studio which is not permitted in MR1 zone."

In September 2015, Debtor, Mover, Jim D'Addario, and others met at D'Addario's headquarters in New York to discuss issues with Swing House, including construction delays and contractors' claims of non-payment. D'Addario agreed to provide further loans, and at the insistence of Jim D'Addario, Mover relocated to Los Angeles to co-manage Swing House, and Genoveva Winsen was made Director of Operations of Swing House.

Because of financial difficulties and the litigation with 7175, Swing House and Debtor filed bankruptcy petitions in November 2016.

**B.      The bankruptcy cases and adversary proceeding**

The court converted Debtor's chapter 11 case to chapter 7 in July 2018. In the Swing House case, the bankruptcy court ultimately confirmed Mover's Fourth Amended Plan of Reorganization on November 2, 2018. Pursuant to the confirmed plan, Mover purchased Swing House and became its sole owner.

Mover then filed an adversary complaint seeking to render Debtor's debt nondischargeable under § 523(a)(2)(A), (a)(2)(B), and (a)(6).[4] He alleged that Debtor fraudulently induced him to make two loans to Swing House by misrepresenting that Casitas could legally house and operate a recording studio. Mover additionally alleged that Debtor made false written representations about Swing House's financial condition in the Offer Memo and attached financial reports, and he claimed that Debtor's failure to disclose financial information, including Swing House's legal issues with 7175 and its loss of business, constituted willful and malicious injury under § 523(a)(6).

Debtor denied the allegations and asserted several affirmative defenses, including estoppel. However, in the joint pretrial stipulation, Debtor expressly withdrew his estoppel defense.

## C.    The trial and the court's decision

The bankruptcy court conducted a five-day trial, concluding in April 2022. Mover and Debtor each submitted trial declarations and testified about the loans and Swing House's business. Debtor testified that he, and not Swing House, managed the musical artists that were listed in the financial documents attached to the Offer Memo. Debtor acknowledged that he was responsible for the contents of the Offer Memo, and he knew that Mover would rely on it.

---

[4] Mover also sought to deny Debtor's discharge under § 727(a)(2) and (a)(4). The court denied those claims and they are not part of this appeal.

Mover testified that he relied on the Offer Memo and oral statements made by Debtor, and he would not have made the loans had he known that Swing House could not legally operate a recording studio at Casitas, had undisclosed increases in its construction budget, and had lost its largest event production client, the Sunset Strip Music Festival.

As the custodian of records for Swing House, Winsen testified about its financial reports, business operations, and its agreements with musical artists. She also testified about Swing House's construction agreements, building permits, and certificates of occupancy and stated that, based on her understanding of zoning regulations and experience in building and operating recording studios, Swing House was not permitted to operate a recording studio at Casitas.

The bankruptcy court entered written findings of fact and conclusions of law and held the debt to Mover nondischargeable. The court ruled that Debtor made materially false written statements in the Offer Memo pertaining to Swing House's financial condition with intent to deceive Mover, including that: (1) Swing House could legally operate a recording studio; (2) Swing House was engaged in management of musical artists; (3) the construction budget for Casitas was $954,500; and (4) Swing House's event production income was expected to increase. The court held that Debtor knew that Swing House could not legally operate a recording studio at Casitas and offered no evidence to support his contention that use

as a sound score production facility was equivalent to use as a recording studio.

The bankruptcy court further held that Debtor made false oral representations about Swing House's ability to legally operate a recording studio and never disclosed that neither Willoughby nor Casitas was zoned for use as a recording studio, or that Swing House had defaulted on the Willoughby lease. The court determined that Debtor's intentional fraud was sufficient to constitute willful and malicious injury under § 523(a)(6), and it entered a nondischargeable judgment in favor of Mover for $239,288.50. Debtor timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err by holding the debt nondischargeable?

## STANDARDS OF REVIEW

The ultimate question of whether a claim is nondischargeable is a mixed question of law and fact, which we review de novo. *Carillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002). Under de novo review, "we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. 2014).

When the appellant challenges the bankruptcy court's factual findings supporting its nondischargeability decision, we review those

9

findings for clear error. *In re Su*, 290 F.3d at 1142. Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

## DISCUSSION

Debtor's central argument on appeal is that the zoning for Casitas allows use for both a recording studio and a sound score production facility and, thus, Swing House was legally permitted to operate as a recording studio at Casitas. Debtor contends that Mover should have been judicially estopped from claiming otherwise because his approved disclosure statement described Swing House as operating a recording studio, and he asserts that Mover and his attorney committed fraud on the court. He argues the court erred by relying on Winsen's testimony about the zoning at Casitas, and he argues that the bankruptcy court's finding of nondischargeability is not supported by sufficient evidence.

## A. Legal standards governing nondischargeability

Section 523(a)(2)(A) excepts from discharge any debt "obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." To prevail on a nondischargeability claim under § 523(a)(2)(A), a creditor must prove, by a preponderance of the evidence: (1) misrepresentation,

fraudulent omission, or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance on the debtor's statement or conduct; and (5) damage proximately caused by its reliance on the statement or conduct. *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 1996).

A fraudulent omission of a material fact may constitute a false representation if the debtor is under a duty to disclose. *Apte v. Japra, M.D., F.A.C.C., Inc. (In re Apte)*, 96 F.3d 1319, 1323-24 (9th Cir. 1996); *Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1089 (9th Cir. 1996). In such cases, reliance and causation are established and need not be separately proven. *In re Apte*, 96 F.3d at 1323.

Section 523(a)(2)(B) excepts from discharge debts arising from the "use of a statement in writing—(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable . . . reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive."

**B.    Debtor did not raise the issues of judicial estoppel or fraud on the court in the bankruptcy court and cannot do so on appeal.**

Debtor's argument that we should set aside the judgment based on judicial estoppel or fraud on the court is meritless. Debtor did not raise these arguments in the bankruptcy court, and consequently waived them.[5]

---

[5] Debtor argues that he did not waive the judicial estoppel defense by failing to

11

*See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957 (9th Cir. 1989) (stating that appellate courts in the Ninth Circuit will not consider arguments that are not properly raised in the trial court).

Debtor expressly withdrew his affirmative defense of estoppel, and he failed to raise a claim of fraud on the court prior to entry of the judgment despite being fully aware of the disclosure statement and Mover's complaint for nondischargeability. *See United States v. Sierra Pac. Indus., Inc.*, 862 F.3d 1157, 1168 (9th Cir. 2017) ("[R]elief for fraud on the court is available only where the fraud was not known at the time of settlement or entry of judgment." (citations omitted)). Moreover, the statement made in Mover's disclosure statement does not form the basis for either judicial estoppel or fraud on the court.

"Judicial estoppel is an equitable doctrine that 'precludes a party from gaining an advantage by taking one position, then seeking a second advantage by taking an incompatible position.'" *U.S. Dep't of Educ. v. Carrion (In re Carrion)*, 601 B.R. 523, 528 (9th Cir. BAP 2019) (quoting *Wilcox*

---

raise it in the bankruptcy court and cites *Beall v. United States*, 467 F.3d 864, 870 (5th Cir. 2006), for the proposition. In *Beall*, the Fifth Circuit held that the appellants waived an issue by raising it for the first time on appeal. It noted however that the appellate court could raise judicial estoppel sua sponte in "especially egregious case[s] wherein a party has successfully asserted a directly contrary position." *Id.* (quoting *United States ex rel. Am. Bank v. C.I.T. Constr. Inc. of Tex.*, 944 F.2d 253, 258 (5th Cir. 1991)). This is not the type of egregious case that might persuade us to overlook Debtor's waiver. As discussed below, the disclosure statement is not contrary to the allegations in Mover's complaint, and the bankruptcy court did not accept the factual positions taken in the disclosure statement.

*v. Parker (In re Parker)*, 471 B.R. 570, 576 (9th Cir. BAP 2012), *aff'd*, 533 F. App'x 740 (9th Cir. 2013)). It requires the court to consider:

> (1) whether a party's later position is clearly inconsistent with its original position; (2) whether the party has successfully persuaded the court of the earlier position; and (3) whether allowing the inconsistent position would allow the party to derive an unfair advantage or impose an unfair detriment on the opposing party.

*In re Parker*, 471 B.R. at 576 (cleaned up).

Similarly, fraud on the court requires an "intentional, material misrepresentation" that "involve[s] an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Sierra Pac. Indus., Inc.*, 862 F.3d at 1168 (citations omitted). The alleged misrepresentations must go "to the central issue in the case," "affect the outcome of the case," and "significantly change the picture already drawn by previously available evidence." *Id.* (quoting *United States v. Est. of Stonehill*, 660 F.3d 415, 435-52 (9th Cir. 2011)).

Debtor relies on the statement in the disclosure statement describing Swing House's business as follows: "Swing House provides comprehensive rehearsal sound stage, rental service, and recording studio services for the music industry at its 21,000 square foot state-of-the-art compound in Atwater Village."

The statement plainly does not indicate that Swing House was legally permitted to operate a recording studio at Casitas or that the plan

proponents believed it could do so. Thus, the statement is not clearly inconsistent with Mover's allegations in the adversary complaint. Additionally, the bankruptcy court approved the disclosure statement, pursuant to § 1125, as containing "adequate information" sufficient to enable a hypothetical investor to make an informed judgment about the plan. We find no basis to conclude that the court relied upon, or was persuaded by, any factual statement made in the disclosure statement.

## C. The bankruptcy court did not err by holding the debt nondischargeable.

### 1. The court properly determined that the evidence supported nondischargeability under § 523(a)(2)(A) and (a)(2)(B).

Debtor contends that the evidence does not support nondischargeability under § 523(a)(2)(A) because that section expressly excludes statements respecting a debtor's financial condition, and it does not support nondischargeability under § 523(a)(2)(B) because fraudulent omissions do not qualify as false written statements.

Debtor is correct that debts obtained by materially false but unwritten statements about a debtor's or insider's financial condition are typically dischargeable. *Oregon v. Mcharo (In re Mcharo)*, 611 B.R. 657, 660 (9th Cir. BAP 2020). But fraudulent omissions are not "statements." *Id.* at 661-62. Consequently, a debtor under a duty to disclose material facts may commit a fraudulent omission under § 523(a)(2)(A) even if those material facts are pertinent to the debtor's or an insider's financial condition. *See id.*

14

at 662. Debtor's materially false written statements respecting Swing House's financial condition are actionable under § 523(a)(2)(B) and his fraudulent omissions are actionable under § 523(a)(2)(A).

The bankruptcy court determined that Debtor made materially false written statements in the Offer Memo and attached financial statements indicating that Swing House: (1) could legally operate a recording studio; (2) earned income from managing artists; (3) had budgeted construction costs of $954,000; and (4) expected an increase in revenue from event production despite losing its largest client. The court also determined that Debtor made fraudulent representations or omissions under § 523(a)(2)(A) by: (1) not disclosing that the zoning of Casitas did not permit use as a recording studio despite implying that it could legally do so; and (2) telling Mover that Swing House needed an additional $50,000 to complete the recording studio when he knew that Swing House was not planning to build such a studio. The bankruptcy court did not err in its application of § 523(a)(2)(A) and (a)(2)(B).

### 2. The bankruptcy court's factual findings are not clearly erroneous.

Debtor argues that the bankruptcy court erred by relying on testimony from lay witnesses Winsen and Mover in determining that Swing House was not legally permitted to operate a recording studio. But Debtor did not offer any evidence, expert or otherwise, to support his belief that Swing House could operate a recording studio at Casitas. More

15

importantly, Debtor admitted in the joint pretrial stipulation that he knew Casitas was not zoned for use as a recording studio when he signed the lease.

Documentary evidence adduced at trial also supports Winsen's testimony and the bankruptcy court's finding. Debtor maintains that Swing House could operate a recording studio at Casitas because the Lists of Uses Permitted in Various Zones as amended by the Zoning Administrator for the City of Los Angeles ("Lists of Uses") permits a recording studio in zone C2, and all zone C2 uses are permitted in zone M1, except hospitals and sanitariums. Contrary to Debtor's contention, the application for the building permit and the Certificate of Occupancy for Casitas clearly state that it is zoned MR-1, not M1, and the permitted use is "sound score production." The Lists of Uses does not include recording studio as a permitted use in zone MR-1, and it does not provide for the same broad inclusion of C2 uses in MR-1 as it does in zone M1.[6]

Debtor disputes the court's finding of reliance and damage because Mover joined Swing House in 2015 but did not mention fraud until 2018 when he purchased the business. Debtor suggests that Mover

---

[6] The Lists of Uses states that MR-1 includes zone C2 uses "which are devoted primarily to the manufacturing of products, or assembling, compounding or treatment of materials with limited retail business only if incidental too the main industrial or manufacturing use . . . , or uses which are conducted only as an accessory use to the main use and provide services for those persons employed on the premises." There is no indication that Swing House intended to operate a recording studio as an accessory service to its employees.

manufactured his claims by finding problems in Swing House's records, and then arguing he was deceived by those problems years earlier.

The bankruptcy court's findings of reliance and damage are supported by Mover's testimony. Though Debtor believes that Mover was not honest, we "give singular deference to a trial court's judgments about the credibility of witnesses." *Cooper v. Harris*, 137 S. Ct. 1455, 1474 (2017).

## D.    Debtor's other arguments

Debtor offers a litany of other arguments, none of which have merit. He contends that the bankruptcy court should have reduced the amount of the nondischargeable judgment by amounts paid on behalf of Mover's claim through Swing House's confirmed chapter 11 plan. We agree that Mover is not entitled to collect more than the amount of the debt, but that does not require us to reverse the bankruptcy court's judgment. The bankruptcy court properly entered a nondischargeable judgment based on Debtor's liability to Mover, and Debtor can raise collection defenses at the appropriate time in the bankruptcy court.

Debtor cites caselaw referring to the "bespeaks caution doctrine" but does not specifically and distinctly argue or explain how this constitutes reversible error. Similarly, he cites three findings of fact made by the bankruptcy court which he believes were based on a misallocation of the burden of proof, and he cites five facts from the record, which the court did not rely upon, which he believes are relevant to his liability. But again, Debtor fails to distinctly argue or explain how this constitutes reversible

17

error.[7] Nor do we perceive reversible error. Accordingly, we decline to address these arguments further. *See Christian Legal Soc'y v. Wu*, 626 F.3d 483, 487-88 (9th Cir. 2010).

Finally, Debtor asserts that Mover failed to allege or prove a prima facie case under § 523(a)(4) and (a)(6), largely because there was no evidence of a fiduciary relationship arising from an express or technical trust. Mover did not allege, nor did the court determine, nondischargeability under § 523(a)(4). And liability under § 523(a)(6) does not require a fiduciary relationship.

## CONCLUSION

Based on the foregoing, we AFFIRM the bankruptcy court's judgment.

---

[7] The bankruptcy court issued 236 findings of fact, and as noted above, based its nondischargeability judgment on numerous written statements and omissions.